THE PEOPLE, ex rel. THE TWENTY-THIRD STREET RAILROAD COMPANY, Appellant, *v.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS, in the city and county of New York, Respondent.

The statutes in relation to the assessment of taxes in the city and county of New York (Chap. 302, Laws of 1859 ; § 4, chap. 410, Laws of 1867 ; § 112, chap. 335, Laws of 1873), confer no power upon the commissioners of taxes and assessments to change the record of assessments after the first day of June in any year.

*It seems* that none of the municipal authorities have any judicial duty to perform after that date, in relation to the assessment of property, or the collection of taxes, save the board of supervisors, and they only when it appears " under oath or affirmation that the party aggrieved was unable to attend within the period prescribed for the correction of taxes by reason of sickness or absence from the city " (§ 10, chap. 302, Laws of 1859).

As, therefore, the act of 1880 (Chap. 542, Laws of 1880), providing for the taxation of certain corporations, companies and associations, was not passed until June first of that year, and as it contains no provisions giving it a retroactive effect, or providing for the contingency, it imposed no duty upon said commissioners, so far as the assessment and collection of taxes for that year were concerned.

The provision of the act of 1880 (§ 1, chap. 269, Laws of 1880) in regard to the review and correction of assessments by *certiorari* confers upon the court the power of review and correction, only when it appears by the return to the writ or the evidence taken thereunder, "that the assessment complained of is illegal, erroneous or unequal." It does not authorize a review where it appears that the assessment in question was made in accordance with the statutes then in force, and in the due performance of the duty then obligatory upon the assessors.

Where, therefore, it appeared by the return to a' writ of *certiorari* to review an assessment upon the personal property of the relator, which was alleged to be illegal, because of the exemption contained in the act of 1880 (Chap. 542, Laws of 1880) that the assessment was made before May 1, 1880, in accordance with the then existing law ; *held*, that the assessment was properly affirmed.

(Argued January 30, 1883 ; decided March 13, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made January 10, 1883, which affirmed an order of Special Term, affirming the pro-

ceedings of the commissioners of taxes and assessments of the city and county of New York, in assessing the capital stock of the relator for the year 1880, which proceedings were brought up for review by writ of *certiorari*.

The facts, so far as material, appear in the opinion.

*John H. Strahan* for appellant. No assessment of the capital stock of the relator for the purpose of taxation in the city of New York could be lawfully made for the year 1880. (Laws of 1880, chap. 542, § 8; 1 Laws of 1880, p. 767; 1 R. S. [Edm. ed.] 361–368, 374–78; id. 360, § 3; 375, § 6; 374, § 1; 376, § 6; 2 Laws of 1857, chap. 456, § 3, p. 2.) In the city and county of New York the mandatory powers of assessment and taxation were conferred exclusively upon the local authorities of the city. (Laws of 1869, chap. 302, p. 678; 1 Laws of 1867, chap. 410, p. 981; Laws of 1873, chap. 335, § 87, p. 507; id., p. 518, § 112; Laws of 1874, chap. 304, § 3, p. 360.) By the statute of 1880, the legislature having made provision by direct assessment and tax for purposes of the State, the particular property thus, as it were, specially appropriated to bear this taxation was, as a consequence of the burden so imposed, relieved from assessment and taxation by the local authorities. (Laws of 1880, chap. 542, § 8; Laws of 1859, chap. 302, § 12.) The legislature having in plain and unambiguous language declared that the assessment and taxation of the capital stock and personal property of the corporations mentioned in the statute (Chap. 542 of the Laws of 1880), were thereafter exempt from assessment and taxation by the local authorities, the relator is entitled to have the assessment of its capital stock made by the local authorities for 1880 vacated and set aside. (*People, ex rel. Westchester F. Ins. Co.,* v. *Davenport et al.,* 25 Hun, 630.) The respondents having, by the provisions of the statute of 1880, been deprived of all jurisdiction over the capital stock and personal property of the corporations mentioned therein, in the matter of assessment for taxation; any assessment by them of such property

for taxation was void, and subsequent confirmation would not validate the same. (Laws of 1881, chap. 332, p. 454; 82 N. Y. 210.)

*S. B. Brownell, Julien T. Davies, George Richards, John O. Heald, Edward Lyman Short* for corporations similarly situated with appellant. The tax commissioners had power over the contents of the assessment-rolls up to July 1. (*N. Y. Life Ins. Co.* v. *B'd Supervisors*, 1 Hoff. Laws, N. Y. 590; *N. Y. Life Ins. Co.* v. *B'd of Supervisors*, 5 Duer, 192; *Washington, etc., Church* v. *Mayor*, 20 Hun, 295; *People* v. *Supervisors*, 15 Barb. 607; *Westfall* v. *Preston*, 49 N. Y. 353; *Boyd* v. *Gray*, 34 How. Pr. 326; *Mygatt* v. *Washburn*, 15 id. 319; *Whitbeck* v. *Van Rensselaer*, 3 Seld. 517.) The word "hereafter" in section 8 means from June 1, 1880. (*So. Hotel Co.* v. *City Court*, 62 Mo. 134.) The exemption is total. (*LeFrance* v. *City of New Orleans*, 27 La. Ann. 186; *Osborn* v. *N. Y. & N. H. R. R. Co.*, 40 Conn. 491; *N. Y., etc., R. R. Co.* v. *Sabin*, 26 Penn. St. 242; *County of Lackawanna* v. *Nat. B'k*, 94 id. 221.) *Certiorari* will lie before the commissioners part with the rolls, but not after. (*People* v. *Commissioners*, 43 Barb. 494; *People* v. *Reddy*, id. 540; *People* v. *Delaney*, 49 N. Y. 655; *People* v. *Commissioners*, 9 Hun, 609.) There is no taxation until tax is extended upon rolls. (*Washington, etc., Church* v. *Mayor*, 20 Hun, 297; *Skidmore* v. *Hart*, 13 id. 444; *Fisher* v. *Mayor*, 67 N. Y. 73; *Downey* v. *May*, 54 id. 186.) The power of the legislature over municipal taxation is complete. (*State* v. *Ry. Co.*, 9 Mo. App. 532; *State* v. *Beaver*, 64 Ala. 295.) Equality of taxation is a fundamental principle. (*People* v. *B'd of Supervisors*, 20 Barb. 88; *State* v. *Township Comm'rs*, 36 N. J. 66; Cooley on Constitutional Lim. 493, 515.) The State has nothing to do with individual tax payers (*County Schuylkill* v. *Comm'rs*, 36 Penn. St. 524). Laws of 1881, chap. 332, § 1, so far as it is a legislative construction of section 8, is only an argument. (*People* v. *B'd of Supervisors*, 16 N. Y. 431; *People* v. *Wilson*, 3 Hun, 441; Hardcastle, 68; *Koshkomey* v. *Burton*, 104 U. S.

668 ; *Bingham* v. *B'd of Supervisors*, 8 Minn. 449.) The assessment of exempt property is without jurisdiction and void. (*Nat. B'k* v. *City of Elmira*, 53 N. Y. 49 ; *Matter of Protectory*, 77 id. 344 ; *Williams* v. *B'd of Supervisors*, 78 id. 563.) The legislature cannot confirm such an assessment. (*Tiff* v. *City of Buffalo*, 82 N. Y. 254 ; *Hopkins* v. *Mason*, 61 Barb. 469 ; *Matter of Van Antwerp*, 56 N. Y. 261 ; *People* v. *McDonald*, 69 id. 362 ; *Horton* v. *Thompson*, 71 id. 513 ; *Ireland* v. *City of Rochester*, 51 Barb. 431 ; *Matter of Turflen*, 44 id. 53 ; *Doughty* v. *Hope*, 3 Denio, 599 ; *A. & N. R. R. Co.* v. *Maquilkin*, 12 Kans. 301 ; *People* v. *Goldtree*, 44 Cal. 323 ; *Nelson* v. *Rountree*, 23 Wis. 367 ; *Abbott* v. *Lindenbower*, 42 Mo. 162 ; *Young* v. *Taylor*, 12 N. W. 208 ; *Halls* v. *Helmer*, 12 Neb. 94.) There being no ambiguity, the language of section 8 must be followed. (*Melter* v. *Kirkpatrick*, 29 Penn. St. 229 ; *Matter of Second Ave.*, 66 N. Y. 395 ; *Johnson* v. *Hudson River R. R. Co.*, 49 id. 462.) The rule that exemptions should be construed strictly has no application. (*R. R. Co.* v. *Laflin*, 105 U. S. 261 ; *Bank* v. *Tennessee*, 104 id. 495 ; *City of St. Paul* v. *St. Paul R. R. Co.*, 23 Minn. 469 ; *State* v. *Whitworth*, 8 Lea, 606 ; *Hoye* v. *R. R. Co.*, 99 U. S. 355.)

*George P. Andrews* for respondent. The argument that if the relator is required to pay taxes in this city for the year 1880, it will be subject to double taxation, is unsound. (Cooley on Taxation, 164.) The taxes levied in the city of New York in the year 1880, upon the relator and other corporations for both local and State purposes, were legalized and confirmed by chapter 332 of the Laws of 1881. (Cooley on Taxation, 228 ; *Grim* v. *Weissenberg School District*, 57 Penn. St. 433 ; *Tucker* v. *Justices of Inferior Court*, 34 Ga. 372 ; Laws of Indiana for 1865, p. 126 ; *Oliver* v. *Keightley*, 24 Ind. 514 ; *Board of Comm'rs of Miami Co.* v. *Bearss*, 25 id. 110 ; *Coffman* v. *Keightley*, 24 id. 509 ; *Comer* v. *Folsom*, 13 Minn. 219 ; Laws of Minnesota for 1865, chap. 53, p. 111.) The relator was taxable in the year 1880 for local, even if it was not for State purposes. (11 N. Y. 601 ; Sedgwick on Stat. and Const.

Law, 38; *People* v. *Molyneux,* 40 N. Y. 113; *Bishop* v. *Barton,* 2 Hun, 436; *S. C.,* 64 N. Y. 637.) By section 8 of chapter 542 of the Laws of 1880, the relator was exempted from taxation for State purposes, but not from taxation by the local authorities. (*O. & A. R. R. Co.* v. *City Council of Alexandria,* 17 Gratt. 176; *Humphreys* v. *City of Norfolk,* 25 id. 97; *W. U. Tel. Co.* v. *City of Richmond,* 26 id. 1; *Buffalo City Cemetery* v. *Buffalo,* 46 N. Y. 506; *Ins. Co.* v. *New Orleans,* 1 Woods, 85; Cooley on Taxation, 146–151.)

Ruger, Ch. J. This appeal was argued in connection with the case of *The People, ex rel. The Westchester Fire Insurance Company,* v. *Gideon W. Davenport and other trustees of the Village of New Rochelle,* and so far as the questions involved in both cases are identical, was determined by our decision therein. That decision, however, did not embrace all of the questions presented by this appeal and we are, therefore, required to consider such additional questions. In this appeal, it is claimed upon the part of the respondent, that chapter 542 of the act of 1880 did not impose any duty upon the commissioners of taxes and assessments in the city of New York so far as the assessment and collection of taxes for that year was concerned, because their assessments had, at the time of the passage of the act, been wholly completed and placed beyond the power of the board of commissioners to alter and correct.

The further point is made that the legislature, by chapter 332 of the Laws of 1881, legalized and confirmed the assessment and collection of taxes on the personal property of the companies and corporations named in chapter 542 of the Laws of 1880, in the city of New York for the preceding year.

Inasmuch as we have held that the exemptions provided for by the law of 1880 applied only to the assessments for State taxes, the examination of these questions is important only so far as they affect the assessment for State taxes upon the property of the relator for the year in question. Those taxes amount to only a small part of the levy complained of. The total valuation for personal property

against the relator on the assessment for the year in question was $85,000, of which the proportion due to State tax was about one-tenth only. The petition of the relator alleged that it objected to such assessment while the books of the commissioners were open for correction and examination; that the commissioners made such assessment after the passage of the act (Chap. 542 of the Laws of 1880), and asks that said assessment should be vacated.

The return of the defendant made to the writ of *certiorari* in this case alleges that the assessment was based upon a statement of their personal property, dated April 26, 1880, prepared and delivered by the relator to the board of commissioners and was completed by them before the 1st day of May, 1880; that copies of such assessment were, in accordance with the law, made by them and delivered to the board of aldermen of the city of New York on the 1st Monday of July, 1880. The writ of *certiorari* herein was issued and presumably served on the 16th day of July, 1880. The case was brought to a hearing before the Special Term upon the petition and return. This proceeding admits all of the allegations of fact contained in the return, and raises only the question of law as to the time when the power of the commissioners to make corrections of the assessment-roll legally terminated. As it is alleged in the return that the assessment in question was actually made before the 1st day of May, 1880, we must assume that it was made at that date and at least one month before the passage of chapter 542, under which exemption is claimed.

It is evident, therefore, that the assessment in question was made in accordance with the statutes in force when it was made and in the due performance of the duty then obligatory upon the commissioners, and that no allegation of illegality can be predicated upon the entry of such assessment upon the book of record. The only question, therefore, if any, presented by the relator upon this appeal is whether the defendant omitted the performance of some duty after June 1, 1880, which the law imposed upon it.

The solution of this question necessitates the examination

of the various statutes prescribing their several powers and duties. Chapter 302 of the Laws of 1859, section 7, provides that the deputy tax commissioners of the city of New York shall, under the direction of the board of commissioners of taxes and assessments, on the first Tuesday of September in each year, commence the assessment of the real and personal property of the tax payers in said city. These assessments are to be completed and entered in a book called "the annual record of the assessed valuation of real and personal estate," by the second Monday of January in each year. Such books are required to be open for examination and correction from said second Monday in January until the first Monday of May thereafter, when they are directed to be closed, to enable the commissioners of taxes and assessments to prepare assessment-rolls of the several wards for delivery to the supervisors. Section 9 provides that the commissioners shall, prior to said second Monday of January, and during the time such books are required to be kept open, advertise the fact that they are thus open for examination and correction. Section 10 provides that during the time such books shall be kept open any person feeling himself aggrieved by any assessed valuation of his real or personal property may apply to have the same corrected.

The commissioners are required to declare their decision on all such applications within thirty days from the time when they are made.

Section 11 provides that the commissioners may, at any time before the first day of May in each year, increase or diminish the assessed valuation of any real or personal property in said city as in their judgment may be necessary for the proper equalization of assessments.

Section 12 requires the commissioners on the first day of May in each year to cause to be prepared assessment-rolls for each of the wards of said city and to certify that the same are correct in accordance with the entries in said books of record.

Section 13 directs that such ward assessment-rolls shall be delivered by said commissioners of taxes to the supervisors

of the city and county of New York on the first Monday of July in each year, and requires the supervisors to be present at the City Hall on that day to receive them.

Section 20 provides that a *certiorari* to review and correct on the merits any decision or action of the said commissioners under section 10 or 11 of said act, may be allowed by the Supreme Court or a judge thereof.

Section 10 prohibits the board of supervisors from making a reduction of any assessments imposed under this act except upon the oath of the party complaining, stating that he was unable to attend, by reason of sickness or absence from the city during the period prescribed for the correction of taxes.

Section 4 of chapter 410 of the Laws of 1867 provides: That the commissioners of taxes and assessments are authorized to correct and remit any tax imposed on real or personal estate on account of any error in entering the same, but such power shall be exercised only within the time now allowed by law for the remission and reduction of taxes. By section 112 of chapter 335 of the Laws of 1873 it is provided that the board of estimate and apportionment of the city, in connection with the board of aldermen, between the first day of August and the first day of November in each year, shall estimate and fix the amount necessary to be raised by tax to pay the expense of conducting the public business of the city and county of New York and file the same in the office of the comptroller. This amount is to be certified by the comptroller to the board of supervisors, who are required to cause the same to be raised and collected by tax upon the real and personal property in said city subject to taxation. Section 3 of chapter 304 of the Laws of 1874 devolves the powers and duties of the board of supervisors of the county of New York upon the board of aldermen of the city of New York.

It seems to us entirely clear, from the simple reading of these various provisions, not only that no power is conferred upon the commissioners of taxes to change the record of assessments after the first day of May in any year, but that they are forbidden from exercising such power after that date unless it

may be held that the provision requiring them to declare their decision upon any application to reduce taxes within thirty days after such application is made, by implication extends their power to the following 30th day of May. But even if we should hold that such was the effect of that provision it would not benefit the relator in this case, as that period had also expired before the passage of the act of 1880. It is, therefore, unnecessary now to decide that question. Not only are the commissioners of taxes precluded either by express provisions or necessary implication from making alterations in the record after such date, but by section 10, chapter 302 of the act of 1859, the board of supervisors are also expressly prohibited from making any reductions whatever from any assessments on real or personal property except in the special case mentioned in that section.

From a brief review of these provisions the duties and the powers of these commissioners are plainly seen and difficult to be misunderstood.

The sole purpose for which the assessment-rolls are left in their possession after May 1st is declared by the statute to be to enable them " to prepare assessment-rolls of the several wards for delivery to the supervisors." It is especially provided that these books shall be open for " examination and correction," from the second Monday of January to the 1st day of May in each year, and by settled rules of construction, such examination and correction is thereby impliedly prohibited after that period to tax payers and commissioners respectively.

It was even thought necessary by the legislature to authorize the commissioners by an express provision to increase or diminish any such assessed valuation for purposes of equalization up to the 1st day of May in each year, and from this provision the implication necessarily arises that they would not otherwise have had that power after the second Monday of January.

They are also required by section 12 to cause to be prepared on the 1st day of May in each year, ward assessment-rolls which they are directed to certify as correct in accordance with the entries in said books of record. A compliance with

this provision would be impossible if the records were altered after that period, and it is manifestly inconsistent with any existing power in the commissioners to alter or change such record. The general law applicable to counties other than New York authorizes and directs the assessors in such counties in the months of May and June in each year, to make the necessary inquiries and to ascertain the names of the taxable inhabitants and the property liable to taxation in their respective districts, and make up a roll embracing such persons and property. By express provision, the assessors are required to advertise on the 1st day of August in each year, that the roll is complete and open for examination, and that they will meet on the third Tuesday of August thereafter to review and correct their assessments. This roll is required to be delivered to the supervisors on the 1st day of September.

Thus either by express authority or necessary implication town and ward assessors, other than those in New York, have until September 1st in each year to review and correct their assessments.

Under these statutes, it has been held in this court, that the taxable status of persons and property becomes fixed on the 1st day of July in each year, and that no power exists to enter property thereafter acquired upon the roll or to change an assessment theretofore made on account of any transfer of title. (*Clark* v. *Norton*, 49 N. Y. 243; *Overing* v. *Foote*, 65 id. 264.) The period corresponding to the duties of assessors in the months of May and June in making assessments outside of the city of New York would seem to lead to the conclusion that the taxable status of persons and property in that city would be determined on the second Monday of January in each year. This view would also harmonize with the special provisions in the statutes conferring power upon the tax commissioners to change the roll for special reasons after that period. A further examination of the legislation on the subject applicable to that city confirms our views. The Laws of 1867 (Chap. 410) contain an express prohibition to the commissioners from remitting or reducing any tax imposed on real

or personal estate on account of any error occurring in the entries of the valuation of such property upon the assessment-rolls, unless such remission or reduction be made within the time allowed by law for the exercise of such power.

The duty of certifying to the ward assessment-rolls after they are made to conform to the book of records is enjoined by statute and is the performance of a mere ministerial act, a refusal to do which would subject the commissioners to punishment as for a neglect of official duty.

In view of the express limitations upon their power imposed by statute, no implication could arise from the fact that they were allowed until the 1st day of July to prepare the ward rolls, and certify them to the supervisors, that their power to alter them was extended to that date. The examination of these statutes shows conclusively that none of the authorities of the city of New York had any judicial duty to perform in relation to the assessment of property or collection of taxes after the 1st day of May, except in the single instance provided for by section 10 of the Laws of 1859.

This provision necessarily implies not only that the board of supervisors are, after the 1st day of May, the only officers having authority to change the record, but also that they have this power in no other case. We have carefully examined the various authorities cited by the numerous and learned counsel employed by the relator and other corporations similarly situated, and can find none which even remotely authorize us to hold that public officers can be chargeable with the duty of performing an act which a statute not only does not expressly authorize, but which it either expressly or impliedly prohibits.

The case of *The People, ex rel. Metropolitan Bank, v. Commissioners, etc.* (43 Barb. 494), arose before the passage of chapter 410 of the Laws of 1867, and the question as to whether the power of the commissioners of taxes to correct the assessment record expired on the 1st day of May or on the 1st of July was immaterial in that case and was not discussed.

The statute (Chap. 269 of the Laws of 1880) undoubtedly greatly enlarged the power previously exercised by the court

in reviewing and correcting illegal assessments by *certiorari*, but even by that statute the power of the court is confined to those cases where it appears by the return of the writ, or the evidence taken thereunder, "that the assessment complained of is illegal, erroneous or unequal for any of the reasons alleged in the petition."

It is there provided that "the court shall have power to order such assessment, if illegal, to be stricken from the roll, or if erroneous or unequal, to order a reassessment of the property of the petitioner." No claim is made on behalf of the relator that this assessment is erroneous or unequal in such a sense as to authorize the court to order a reassessment, but the claim is that the assessment was altogether illegal on account of the exemption contained in the act of 1880, and that it was their duty to strike it from the assessment-roll on the passage of that act. This claim we have seen cannot be supported for the reason that the assessment as originally made was authorized by law and they had no power, and it was therefore no part of their duty, to correct the assessment after May 1st.

The *certiorari* authorized by section 20 of the act of 1859 is expressly confined to a review of alleged erroneous decisions made under the powers conferred by sections 10 and 11 of that act. The action of the commissioners under these sections is confined to the period between the second Monday of January and the first of May in each year. It must, we think, be assumed that the legislature was acquainted with the law regulating the time of making assessments for the collection of taxes in the city of New York, and were aware of the fact that no municipal officer in that city had the power of enforcing the exemption provided by chapter 542 of the act of 1880, and since it did not provide for such a contingency we must infer that it did not intend that the act should apply to the tax levy in that city for that year.

The act must be construed to have a prospective operation, and to become operative and binding upon the officers having charge of the duty of assessing and levying taxes only when the occasion for its exercise arises and when they are charged

with the performance of some prospective official duty in relation thereto.

In the city of New York no discretionary duty was left to be performed after June 1, 1880, by any municipal officer in relation to the assessment and collection of taxes, except in the single instance hereinbefore spoken of. Without the aid of additional legislation effect could not be given to the exemption provided by the act of 1880 in that city. This result is the more gratifying from the fact that otherwise great injustice would be done in the city of New York in the collection of State taxes for the year 1880. Their payments into the State treasury always precede the collection of taxes, and in this case the money to pay them was borrowed upon the bonds of the city and mainly paid into the treasury before the passage of this exemption act.

This result places the city upon terms of equality with the other counties in the State, inasmuch as in the latter case the payment into the treasury of the State always follow the collection of their taxes.

The conclusion reached on this point renders it unnecessary to examine the question as to the effect of the confirmatory act of 1881.

The order should be affirmed, with costs.

All concur.

Order affirmed.