THE ASSOCIATION FOR THE BENEFIT OF COLORED ORPHANS IN THE CITY OF NEW YORK, Respondent, *v.* THE MAYOR, Etc., OF THE CITY OF NEW YORK, and Others, Appellant.

*Taxation — exemption of orphan asylums from —* 1 R. S. (6th ed.), 932, sec. 5 — 1852, *chap.* 282 ; *sec.* 827, *chap.* 410 *of* 1882 — *construction of the limitation upon the exemption.*

The plaintiff was incorporated as a colored orphan asylum, under special acts, to provide a place of refuge for colored orphans, where they could be boarded and clothed, and also be suitably educated and receive religious instruction. The plaintiff, on the last day of July, 1877, acquired title to certain premises in the city of New York which it devoted to these purposes, having a schoolhouse thereon and also a building used for public worship.

*Held,* that the property was exempt from taxation, under section 5 of 1 Revised Statutes (6th ed.), 932, as to all taxes becoming a charge thereon after it had acquired the title thereto, but was subject to the tax for the year 1877, which was a charge thereon at the time of its purchase.

It was not intended, by chapter 282 of 1852, or section 827 of chapter 410 of 1882 — providing that the exemption from taxation of buildings used for the purposes therein specified should not apply to any building or premises in the city of New York, "unless the same shall be exclusively used for such purposes and exclusively the property of a religious society"—to limit the exemption to such property as is owned by a religious society, but it was intended thereby to give the exemption to such building or premises as should be exclusively devoted to one or the other of the purposes therein specified, whether the property was owned by a religious corporation or not.

APPEAL from a judgment, recovered on a trial at the Special Term.

*Arthur H. Masten,* for the appellant.

*Herbert A. Shipman,* for the respondent.

DANIELS, J.:

By the judgment the plaintiff was relieved from the payment of taxes imposed upon property owned by it in the city of New York, for the years 1877, 1878, 1879 and 1880. This relief was awarded to the plaintiff on the ground that its property was exempt from taxation under the laws of this State. It was incorporated as a colored orphan asylum by chapter 232 of the Laws of 1838. Its charter was amended by chapter 255 of the Laws of 1871, and chapter 306 of the Laws of 1872. But by neither of these acts was the particular purpose or object of its incorporation any further declared than that might be inferred from its name, and the provisions in the acts concerning its management. But by its charter it was declared that the general powers provided by title 3 of chapter 18 of part 1 of the Revised Statutes should be possessed by the corporation. And under those general powers it was invested with the authority to make by-laws, not inconsistent with any existing law for the management of its property, and the regulation of its affairs. (2 R. S. [6th ed.], 391, § 1, sub. 6.) And under this authority, by article 2 of its constitution, it was declared that "the object of this society shall be to provide and maintain a place of refuge for colored orphans, where they shall be boarded, clothed and suitably educated, until of an age to be bound out or apprenticed. In admitting children to the asylum those deprived of both parents shall have the preference, but if means be afforded, half orphans shall be received."

It is evident from this article and its other regulations that the children in charge of the corporation were to be educated, and on the Sabbath day and national fast days, were to receive religious instructions. And the court, before which the trial took place, found, as a fact, that it was the object of the corporation not only to provide a place of refuge for colored orphans where they could be boarded and clothed, but in addition to that should be suitably educated in religion and other branches of knowledge. That was the purpose declared and provided for by its rules and regulations, and these objects appear to have been attained in the management of the asylum. And that rendered the building upon its property not only a school-house, but a place for public worship, as those terms were employed in the general statutes of the State directing what property should be exempt from taxation. (1 R. S. [6th ed.], 932, § 5.) And this provision of the statute was in no manner made inapplicable to the property of the corporation by anything contained in chapter 282 of the Laws of 1852, or section 827 of chapter 410 of the Laws of 1882, containing nearly the same enactment. That limited the property mentioned in the preceding statute to exemption from taxation in the city of New York, to such as should be exclusively used for such purposes as were mentioned in this section of the Revised Statutes. This section of the act of 1852 was awkwardly framed, for, by its literal reading, it would require that the property exempt should not only be exclusively used for one of the purposes mentioned, but in addition to that should be exclusively the property of a religious society. But that could not have expressed the intention of the legislature, for it appears by the preceding portion of the section, that the exemption, as it was qualified, was still intended to include every building for public worship, and every school-house or other seminary of learning. These were each mentioned as distinct and separate classes of property exempted from taxation. And what the legislature intended by the succeeding portion of the section was to require that the building or premises should be exclusively devoted to one or the other of these objects, and not that they should be devoted to such an object, and also be the property of a religious society. This branch of the section was designed to be distributive in its effect, and to require where the building should be a school-house or other semi-

nary of learning, that it should be exclusively devoted to that purpose. And where it should be a building for public worship that it should also be exclusively the property of a religious society. If that was not the design then all corporate property used for school-houses or other seminaries of learning in the city of New York would be subject to taxation unless it was owned by a religious society. There could be no reason for making such a discrimination, and it could not have been the purpose of the legislature to have made it in the enactment of this section of the law of 1852. But what was undoubtedly intended was to leave the property, which was exempt from taxation by the Revised Statutes as still entitled to such exemption, provided it should be exclusively used for the purpose in this manner intended, to be protected by the law. And that the object for which the property of the plaintiff was acquired and used entitled it to exemption from taxation is clear from the language of the statute, for that has been made to include a college, incorporated academy, or other seminary of learning, every school-house and building for public worship.

The premises owned and used by the plaintiff were devoted to two of these purposes. They were a school-house and also a building used for public worship, and exempt from taxation under these statutes. A point similar to this was considered in the _Hebrew Free School_ v. _Mayor_, etc. (4 Hun, 446). The object of the corporation, in that case, was to provide for the gratuitous instruction of Jewish youth in the Hebrew religion and language, and other branches of knowledge, and promote the study of Hebrew literature, which was held sufficient to entitle its property to exemption from taxation under these provisions of the statutes. As to the taxes of 1878, 1879 and 1880, the judgment was accordingly entirely right.

But the plaintiff did not acquire its title to this property until the last day of July, 1877, after the tax of that year had become a charge upon it. For that tax it was not entitled to this exemption, for it acquired its title subject to the payment of the lien which had then been created. This principle was applied to the purchase of property in the month of June, 1876, in the case of _People ex rel. American Geographical Society_ v. _Commissioners of Taxes, etc._ (11 Hun, 505–508). And it was in like manner observed in

*McMahon* v. *Beekman* (65 How., 427) and *People ex rel. Twenty-third Street Railroad Company* v. *Commissioners of Taxes, etc.* (91 N. Y., 593). As to the taxes for the year 1877 amounting to the sum of $524.70, the judgment was erroneous and should be reversed. But the residue of the judgment was supported by the laws of the State, and to that extent it should be affirmed and this modification of it should be, without costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment modified as directed in opinion, and affirmed as modified, without costs.