CONGREGATION KAL ISRAEL AUSCHI POLAND *v.* CITY OF NEW YORK.

*(Supreme Court, Special Term, New York County.  May 1, 1888.)*

1. TAXATION—VALUATION OF PROPERTY—WHEN LIABILITY BECOMES FIXED.
    Under the consolidation act, (Laws N. Y. 1882, c. 410,) authorizing the tax commissioners of New York city to increase or diminish the valuation of property between the second Monday of January and May 1st of each year, the taxable liability of property is not permanently fixed until May 1st, and the validity of a tax may be questioned at any time before May 1st, though the party making the objection acquired title after the annual record of the assessed valuation had been delivered to the commissioners of taxes and asssessment.

2. SAME—EXEMPTION—BUILDINGS USED FOR PUBLIC WORSHIP—WHAT ARE.
    Where the basement of a synagogue is used for the janitor's residence, and for baths, which are open to all who apply and pay the fee demanded, whether in ob-

servance of religious rites or not, the building is not used for religious purposes exclusively, within the meaning of the consolidation act, (Laws N. Y. c. 410, § 827,) providing that buildings for public worship in the city of New York shall not be exempt from taxation unless the same shall be exclusively used for such purpose.

On motion to dismiss complaint.

Action by the Congregation Kal Israel Auschi Poland, a religious corporation, against the city of New York, to remove, as clouds upon its title, certain taxes imposed by the city upon its property. Laws N. Y. 1882, c. 410, consolidates into one act the special and local laws affecting public interest in the city of New York.

*Samuel J. Crooks*, (*Louis Levy*, of counsel,) for plaintiff. *George S. Coleman* and *John L. O'Brien*, (*Henry R. Beekman*, corporation counsel,) for defendant.

LAWRENCE, J. I do not think that the cases referred to by the counsel or the corporation sustain the position that, so far as the tax of 1881 is concerned, it is too late for the plaintiffs to question its validity, for the reason that the plaintiffs acquired title after the "annual record of the assessed valuation of real estate" for the year 1881 had been delivered by the deputy tax commissioners to the commissioners of taxes and assessment. That record was delivered to the tax commissioners on the second Monday of January, 1881, and the plaintiffs acquired title on or about the 28th day of March of that year. Between the second Monday of January and the 1st day of May in each year power is vested in the tax commissioners to increase or diminish the valuation of property as provided by section 819 of the consolidation act. Laws 1882, c. 410. It cannot, therefore, properly be said that the *status* of property, as to its liability to be taxed, is permanently fixed until the 1st day of May in each year. A contrary construction of the statute would lead to the result that the power exercised by the tax commissioners, at least since 1859, of striking property from the annual record, when satisfied that it is exempt by law, does not exist; and that the power is limited to decreasing or increasing the valuation. In the case of *Association* v. *Mayor, etc.*, 104 N. Y. 590, 12 N. E. Rep. 279, the opinion indicates that the court were of the opinion that the assessable character of the property is not fairly determined until the closing of the books of the tax commissioners on the 1st of May; and, if there is anything in the opinion in the case of *People* v. *Commissioners*, 91 N. Y. 593, to the contrary, the latter case must be deemed controlling, particularly in view of the fact that in the case in 91 N. Y., the power of the tax commissioners, after the 1st day of January and before the 1st day of May in each year, was not the direct subject of examination; the question there presented arising under chapter 542 of the Laws of 1880, which was passed on the 1st day of June of that year. The cases of *Church* v. *Mayor, etc.*, 20 Hun, 297, *In re Church*, 41 Hun, 310, and *Association* v. *Mayor, etc.*, 38 Hun, 593, are directly in point against the contention of the defendants. If, therefore, the property referred to in the complaint is exempt from taxation for the reasons stated by the plaintiff, I am of the opinion that such exemption may be claimed for the year 1881, as well as for the years 1882, 1884, and 1885.

The Revised Statutes, (vol. 2, 7th Ed., 982,) as amended by chapter 397 of the Laws of 1883, provides that "every building erected for the use of a college, incorporated academy, or other seminary of learning, and in actual use for either of such purposes, every building for public worship, every school-house, court-house, and jail used for either of such purposes, and the several lots whereon such buildings, so used, are situated, and the furniture belonging to each of them," shall be exempt from taxation. And section 827 of the consolidation act, which is but a re-enactment of chapter 282 of the Laws of 1852, also provides that "the exemption from taxation of every building for public worship, and every school-house or other seminary of learning, under

the provisions of subdivision three of section four, title one, chapter thirteen of part first of the Revised Statutes, or amendments thereof, shall not apply to any such building or premises in the city, unless the same shall be exclusively used for such purposes, and exclusively the property of a religious society." Were the premises of the plaintiff used exclusively for religious purposes? Evidence was given upon the trial, designed to show that the baths in the basement were connected with the religious ceremonies and observances of the congregation, and used as a part of such rites and ceremonies, and that contributions voluntarily given by the bathers went to the support of the building. Evidence was given, on the other hand, tending to show that the baths were open to all Hebrews who applied to use them; that such use was not limited to plaintiff's congregation; that a fee for such use was demanded; and that the money thus collected went to pay the janitor, after the expenses of keeping up and providing for the baths had been deducted. It was also shown that the janitor, with his wife and family lived in the basement, and used the same as a family residence. After deliberation upon this evidence, I am constrained to say that I do not think that the plaintiffs have made out that those portions of the premises which are used for the accommodation of the janitor and his family and for the baths, which were allowed to be used by all who applied, whether in connection with the observance of religious rites and ceremonies or not, can be said to be used exclusively for religious purposes. The whole of the building above the basement is undoubtedly used as a synagogue, and I understand from the evidence that that fact was taken into consideration by the deputy tax commissioners in making their assessment; but, whether so or not, inquiry cannot now be made as to the quantum of the tax.

On the argument I was strongly inclined to the opinion that the recent decision of the general term of this court in the case of *Association* v. *Mayor*, etc., 44 Hun, 102, was controlling in this case. An examination of that case, however, shows that the court there held that such of the purposes of the building of the plaintiff as were not religious came under the denomination of "school purposes," in such a sense as to entitle it to exemption from taxtion. The case is not, therefore, in point.

It follows from what has been said above that the premises No. 80 Forsyth street were not used exclusively for religious purposes at the time when the taxes in question were imposed, and that the complaint must be dismissed.