In the Matter of the Judicial Settlement of the Account of Samuel D. Babcock et. al., as Executors, etc., of Christian E. Detmold, Deceased.

D., a resident of the city of New York, died July 2, 1887, possessed of real estate, which previous to his death had been assessed to him for the taxes of 1887, and the assessment-rolls delivered to the aldermen for the ascertainment of the amount of the tax and its extension by them thereon. D. left a will by which, subject to the payment of a certain annuity, he devised all his property to his daughters for life, with remainder to their issue. It was claimed by the remaindermen that the taxes should be paid from the income of the estate going to the life tenants. The executors inventoried the taxes as liabilities of the estate, payable out of the personalty in their hands. *Held,* no error; that the testator's liability for the payment of said taxes had become fixed prior to his death (1 R. S. 389, §§ 1 *et seq.,* chap. 410, §§ 814 *et seq.,* Laws of 1882) and so, they were a liability of his estate, under the provision of the statute prescribing the order of payment of the debts of a deceased person by his personal representatives, which directs the payment of "taxes assessed upon the estate of the deceased previous to his death."

*Barlow* v. *St. Nicholas Nat. Bank* (63 N. Y. 399); *In re Selleck* (111 id. 284); *Seabury* v. *Bowen* (3 Brad. 207); *Griswold* v. *Griswold* (4 id. 216) distinguished.

An assessment, so far completed that the name of the person mentioned as owner cannot be changed or altered by the assessment officers before the death of such person, is payable from his estate in due course of administration.

Reported below, 52 Hun, 142.

(Argued June 20, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 29, 1889, which reversed an order of the Surrogate's Court sustaining the objection of James W. Perry, special guardian of certain infants, to the payment of taxes.

The nature of the action and the facts are sufficiently stated in the opinion.

*James W. Perry* for appellants. The annual charges and taxes imposed on property must always be borne by the life tenants, unless the creator of the estate clearly shows a contrary intention. (*Deraismes* v. *Deraismes*, 75 N. Y. 154; *Griswold* v. *Griswold*, 4 Brad. 216; *Booth* v. *Ammerman*, Id. 129; *Sheldon* v. *Ferris*, 45 Barb. 124: *De Witt* v. *Cooper*, 18 Hun, 67; *Lawrence* v. *Holden*, 3 Brad. 142; *Whitson* v. *Whitson*, 53 N. Y. 479.) To change this general rule, that each estate must bear its own burdens, the intention of the creator of both estates must be clear and unequivocal. (*Lawrence* v. *Holden*, 3 Brad. 142; *De Witt* v. *Cooper*, 18 Hun, 69; *Craig* v. *Craig*, 3 Barb. Ch. 90; *Carter* v. *Youngs*, 10 J. & S. 418; *Pinckney* v. *Pinckney*, 1 Brad. 269; *Deraismes* v. *Deraismes*, 75 N. Y. 154.) There are no circumstances in the case here which in any way justify the change of the general rule, and render the charge of the annual tax for 1887, against these infant remaindermen, equitable and proper. (Williams on Executors, 1398; *Pinckney* v. *Pinckney*, 1 Brad. 275.) The taxes for 1887 were not a debt at the time of the testator's death, as contended by the executors, and, therefore, are not chargeable against the *corpus* of the estate. (*Barlow* v. *St. N. Nat. Bk.*, 63 N. Y. 399; 1 Alb. Law Jour. 514; *Kern* v. *Towsley*, 45 Barb. 150; *Manice* v. *Millen*, 26 id. 14; *Dowdney* v. *Mayor, etc.*,

54 N. Y. 188; *Lathers* v. *Keogh*, 109 id. 589; *Harper* v. *Dowdney*, etc., 21 N. E. Rep. 63; *In re Selleck*, 111 N. Y. 284; *Seabury* v. *Bowen*, 3 Brad. 208 · *Griswold* v. *Griswold*, 4 id. 217.)

*Charles E. Miller* for the respondents. Taxes assessed upon the estate of the deceased previous to his death are entitled to a preference in the order of payment. (1 R. S. [7th ed.] 2298.) Testator became personally liable for the payment of the tax on the second Monday of January, 1887. (1 R. S. 389, § 1; *People* v. *Comrs.*, 91 N. Y. 593; *Assn.* v. *Mayor, &c.*, 104 id. 581, 590; *Rundall* v. *Lakey*, 40 id. 513, 517; *De Peyster* v. *Murphy*, 66 id. 622; *Mygatt* v. *Washburn*, 15 id. 316; *McMahon* v. *Beekman*, 65 How. 427; *Sisters of the Poor* v. *Mayor, etc.*, 112 N. Y. 677; 51 Hun, 355.)

RUGER, Ch. J. Christain E. Detmold, a resident of the city of New York, died on July 2, 1887, owning real estate liable to taxation in such city. He left a will by which, subject to the payment of a certain annuity to his wife, he devised all his property to his daughters for life, with remainder to their issue. Previous to his death his real estate had been assessed to him for the taxes of 1887, and the assessment-rolls had been delivered to the aldermen for the ascertainment of the amount of the tax and its extension by them upon such rolls.

It is claimed by the remaindermen that these taxes should be paid from the income of the estate going to the life tenants, and that they were, therefore, improperly inventoried by the executors as liabilities of such estate.

The sole question in the case is, therefore, whether such taxes constituted a liability of the estate. It is contended by the appellants that, inasmuch as current taxes, as between life tenants and remaindermen, are properly chargeable to the former, these taxes should not be included in the inventory of the debts of the estate. As between life tenants and remaindermen the former are undoubtedly chargeable with the

payment of current taxes assessed after property has come into their possession (*Deraismes* v. *Deraismes*, 72 N. Y. 154); but the question here arises between remaindermen and executors as to assessments made during the life of the testator. In such case we think a different rule prevails, and the point to be determined is who, in such a case, is primarily liable to the city for the payment of such taxes. If they constituted a debt of the estate, it was undoubtedly the duty of the executors to include them in the inventory of liabilities, and pay them from the personal property in their hands chargeable with the payment of such liabilities.

A brief reference to the tax laws of the state and the course of proceedings leading to the consummation of the annual tax levy in the city of New York seems to us to demonstrate the liability of the estate for such taxes. By general statutes it is provided that "every person shall be assessed in the town or ward where he resides when the assessment is made, for all lands then owned by him within such town or ward." (R. S., part 1, § 1, art. 1, tit. 2, chap. 13.) The special provisions for assessments and taxation in the city of New York, show it to be the duty of the commissioners of taxes and assessments, between the first Monday of September in each year and the second Monday of January thereafter, to cause to be made lists properly verified, containing, among other things, the names of persons and corporations liable to be taxed; a description of the property subject to taxation, and an appraisement of the value of all such property in the city of New York. These lists are required, before the second Monday in January in each year, to be entered in books called "the annual record of the assessed valuation of real and personal estate," which must, after being prepared, be kept open at the office of the commissioners from the second Monday of January until the first day of May in each year, for examination and correction. After May first they are required to be closed. (Laws of 1882, §§ 814, 817, 818, chap. 410; *Twenty-third St. R. R. Co.* v. *Mayor, etc.*, 91 N. Y. 593.) On the first day of May the commissioners are required to cause to be

prepared from such annual records, assessment-rolls for each of the wards of said city, which are to be delivered to the aldermen of the city on the first Monday of July; and the aldermen are then directed to ascertain and extend upon such rolls, the amount of the taxes respectively chargeable upon the property, to the persons and corporations described in such rolls. (§§ 828, 829, 831, 832.) After the second Monday of January no provision of law is made by which other names can be substituted on such rolls as taxpayers or become chargeable with the payment of taxes on the assessment-rolls. (*People ex rel. Twenty-third St. R. R. Co.* v. *Com'rs of Taxes*, 91 N. Y. 593; *Assn. for Colored Orphans* v. *Mayor, etc.*, 104 id. 581.)

When the ward assessment-rolls are finally completed by the extension of the tax thereon, the aldermen are required, on or before the first Monday of September in each year, to deliver the same to the receiver of taxes, together with their warrant directing and requiring him to collect from the several persons named in such rolls the sums set opposite to their respective names. (Consolidation Act, 1882, § 833.) It would seem, therefore, that the testator's property had been legally assessed to him, and his liability for the payment of the tax thereon had become irrevocably fixed prior to the date of his death. We think the question in this case is controlled by the decision of this court in *Rundell* v. *Lakey* (40 N. Y. 513). In that case the defendants sold and conveyed to the plaintiff a farm on the first day of September. Previous to that time it had been assessed by the town officers to the defendants and the assessment-roll had been delivered to the supervisors in accordance with the statute. The amount of the taxes thereon was not ascertained and extended on the roll by the supervisors until November thereafter. The decision of the case depended upon the construction of a contract between them, which provided that the person legally liable to the payment of the tax should pay it. It was held that the vendors were so liable by reason of their ownership of the property at the time the assessment was made. Judge GROVER there said:

"It is, I think, apparent, from the various provisions of the statute, that, in respect to both real and personal property owned by a resident of the town or ward where the former is situate, that the tax is imposed upon the person of such owner on account of the ownership of such property, and his liability to such tax is conclusively fixed by the completion and delivery of the roll. * * * It follows that at the time of the conveyance of the farm by the defendants to the plaintiff, the former, in consequence of their ownership, had become liable for the payment of the tax for the current year. That the time when they became so liable was the time of the completion and delivery of the roll, although the amount of the tax was not ascertained and fixed for some two months afterwards, yet the foundation of the liability was complete. They owned the property at the time fixed by law for determining who should be taxed therefor as owner."

The principle of this case was not affected by the subsequent decision in *Barlow* v. *St. Nicholas Nat. Bank* (63 N. Y. 399). The question there was simply whether an assessment of land, upon which no tax had been extended, was an incumbrance within the meaning of a covenant in a deed conveying it free of incumbrances, and it was held that it was not. The question involved was simply as to the meaning of the word "incumbrances" as used in such conveyance. It did not follow at all, from the decision thus made, that such tax did not constitute a personal liability against the vendor, and could not have been collected from his property.

Neither does the case *In re Selleck* (111 N. Y. 284) have any bearing upon the question under consideration. There the taxes disallowed to the executor were imposed upon the property after the death of the testator, and were not a debt of the estate.

In the case of *Clark* v. *Norton* (49 N. Y. 243), it was said that "the law prescribes and regulates the duties of assessors and defines and limits their powers with precision, and by an adherence to the statute the rights of the taxpayers are protected and secured. The assessors have the months of May

and June within which to make the necessary inquiries and to ascertain the names of the taxable inhabitants in the respectives towns and wards, and the property, real and personal, within their jurisdiction liable to taxation, and to prepare an assessment-roll containing the names of those liable to taxation, and the property to be taxed, with its value arranged in columns, as directed by law. The assessment must be made by the first of July, and of property and persons in respect to the liability as it exists on that day. The assessment-roll must be completed and a fair copy made and deposited for examination by those interested, on or before the first day of August. An individual not liable to taxation on the first of July could not be placed upon the assessment-roll after that time, neither could a person whose name was properly on the assessment-roll be assessed for property acquired by him after that day." The rule applicable to the state at large, as thus laid down, was applied to the analogous statutes relating to assessments in the city of New York in the case of *Sisters of St. Francis* v. *Mayor, etc.* (51 Hun, 355, affirmed in this court in 112 N. Y. 677).

We are also of the opinion that the statute prescribing the order of payment of debts of a deceased person by his personal representatives is conclusive upon the question presented by this case. It is thereby provided that " every executor and administrator shall proceed with diligence to pay the debts of the deceased, and shall pay the same according to the following order of classes : (1.) Debts entitled to a preference under the laws of the United States. (2.) Taxes assessed upon the estate of the deceased previous to his death," etc. (R. S. [7th ed.] 2298, § 27.) This statute furnishes the rule by which personal representatives must be governed in ascertaining and paying the debts of the deceased.

It is urged by the appellants that the taxes in question were not assessed previous to the death of the testator within the meaning of the statute, inasmuch as the amount thereof had not then been ascertained and extended upon the roll. We cannot concur in the position contended for. The phrase

"taxes assessed " is slightly ambiguous, as taxes cannot properly be said to be assessed at all.    Assessments of property are made as the basis of taxation.    Taxes are the sums required to be paid for governmental purposes by property owners in the proportion that the value of the assessable property possessed by them, respectively, bears to the entire value of assessable property in the district for whose purposes the taxes are imposed.    The assessment officers have nothing to do with the computation of the taxes.    That duty is performed by aldermen or supervisors, who take no part in the act of making assessments.    This ambiguity is to be interpreted according to the intent and object of the statutes, and, as thus construed, the words " taxes assessed," we think, refer to assessments for taxation made prior to the decease of the taxpayer.    They are described as being made upon his estate ; clearly implying an intention to charge the estate with their payment.    When assessment-rolls are delivered to the supervisors, the data upon which taxes are to be computed is fixed by law, and the duty devolving upon the supervisors is purely clerical in its nature, and consists in computing the ratio of taxation and the sums chargeable to the respective taxpayers.    At that time the liability of the taxpayers had become irrevocably fixed, and no contingency could arise which would exempt his property from the burden thus laid upon it.    The scheme of taxation in the state contemplates the existence of property liable to be assessed for taxes, and the liability of some existing person as owner for the payment of·the taxes thereon.    The exigencies of the case require that the assessment of property shall relate to some fixed period of time, in order that the liability of persons to pay taxes shall be made certain, and exempt from contingencies rendering their assessment and collection fluctuating, doubtful and uncertain.    It is, therefore, provided that the enumeration of persons and property liable to taxation in the city of New York shall be had between the first day of September and the second Monday of January thereafter in every year.    Provision is made for alterations in the valuations of

property up to May first in every year; but the taxable estates of persons and property in that city become established in January, and cannot be changed or affected by subsequent occurrences. Any other theory would be impracticable and lead to insuperable difficulties and confusion in making assessments.

The plain meaning of the act is that assessments, so far completed that the name of the person named as owner cannot be changed or altered by the assessment officers before the death of such person, shall be payable from his estate in due course of administration. Any other rule would deprive the state of the personal responsibility of parties liable to the payment of taxes, who should die between the first Monday of January and the first Monday of September in each year. Such a construction is opposed to the manifest theory of the laws relating to assessments for taxation, and cannot be entertained.

The cases cited by the appellant from Bradford's Reports do not, in our opinion, conflict with the views here expressed, but rather seem to support them. *Seabury* v. *Bowen* (3 Brad. 207) was the case of an assessment for the improvement of a street. This assessment had been confirmed before the death of the testatrix, and it was held by the surrogate that it thereby became a debt of her estate. The requirement of the confirmation of an assessment, in order to render it valid, indicates a manifest distinction between assessments for improvements and taxes imposed under an annual tax levy.

In *Griswold* v. *Griswold* (4 Brad. 216) the testator died in August, 1856, in New York. The surrogate says: "The devise to the testator's widow of the use of his dwelling-house was made subject to the discharge of the taxes by the life tenant. In all cases taxes due at the time of the death of the deceased person are payable out of his personal estate, and taxes accruing subsequently are chargeable upon the land. There is no ratable division or apportionment, but the entire tax becomes due and must be paid according to the rule just stated." It is not entirely clear whether the surrogate

intended to hold the widow liable to pay the taxes or the estate, or whether, if he held the widow liable, it was by virtue of the devise making the land subject to the discharge of taxes or because he thought the taxes were not due. If the latter, we think he was clearly wrong within the case of *Rundell* v. *Lakey* and others above cited.

These views lead to an affirmance of the judgment of the General Term, and it is, therefore, affirmed, with costs of this appeal to respondents.

All concur.

Judgment affirmed.