WISE et al. v. L. & C. WISE CO.

In re McMASTER.

(Supreme Court, Appellate Division, First Department.  December 11, 1896.)

TAXATION OF PERSONAL PROPERTY—CREDITOR'S LIEN—PRIORITY.

> Where the taxes imposed on personal property are not made a lien by statute, and a specific lien is impressed on the property by a creditor before the taxes are payable, the creditor's lien prevails against the unpaid taxes.

Appeal from special term, New York county.

Action by David L. Wise and another against the L. & C. Wise Company, aided by attachment.  A receiver was appointed for the debtor corporation afterwards, to whom the attached property, being all the property of the debtor in New York, was delivered by the sheriff, the specific liens of plaintiffs being preserved as superior to the claims of other creditors.  The property was sold, and the proceeds did not equal the preferred liens.  The receiver of taxes of New York City filed a claim for personal taxes assessed on the corporation in 1893.  From an order that the claim of the receiver of taxes be paid as a prior lien on the funds in controversy, plaintiffs' assignee appeals.   Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and INGRAHAM, JJ.

Otto Horwitz, for appellant Simon Goldenberg.

R. G. Monroe, for respondent receiver of taxes.

INGRAHAM, J.    Assuming that the receiver of taxes would be entitled to priority in the disposition of the funds of a corporation in his hands held for the purpose of distribution among the creditors of the corporation, the rules applicable to such distribution do not apply in this case.   Here the receiver took possession of this property subject to certain liens, the lienors being entitled to be paid the amounts of their liens out of the proceeds of the property before there was any distribution among the creditors of the corporation. The question is, not between the creditors of the corporation generally and the receiver of taxes, but between a creditor whose claim against his debtor has become a lien upon certain specific personal property prior to the time that the tax was payable, and long prior to the time that any warrant could have been issued to enforce the tax.    The tax commissioners had assessed the property of the L. & C. Wise Company, a foreign corporation that was subject to taxation within this state for the year 1893, and a tax was imposed by the board of aldermen on this property so assessed by the tax commissioners under the authority of sections 831 and 832 of the consolidation act (chapter 410, Laws 1882).   The property thus assessed as

subject to taxation was the property of the corporation, and was not by any provision of law subject to a lien to secure the payment of this tax. The corporation could sell or mortgage such property prior to the time that a warrant was issued by the receiver of taxes, and the levy was made upon it under such warrant; and it is entirely clear that the receiver of taxes could assert no lien upon such property superior to the claim of such a purchaser or mortgagee. Taxes imposed upon real estate are made a lien thereon (Consolidation Act, § 915); but no such provision is made in relation to a tax upon personal property. A method is provided for the collection of a tax upon personal property, but this is based entirely upon the theory that the amount of the tax becomes a debt of the person taxed, and not a lien upon any specific property. Section 848 of the consolidation act provides for the demand for the payment of the tax upon the president or proper officer of the corporation, and, in case the tax is unpaid on the 15th day of January of the year following, the receiver is to issue his warrant to the sheriff or any marshal of the city of New York, commanding him to levy a tax by distress and sale of the goods or chattels of the person against whom the warrant is issued, or any goods or chattels in his or her possession. Section 857 of the act provides that, if there are no goods or chattels in his possession upon which a city tax can be levied, an application may be made to the supreme court to enforce the payment of the tax by imposing a fine upon the person liable to pay the tax. Section 863 of the act provides that the amount of such tax may be recovered by the receiver of taxes by action. The amount of the tax is, therefore, a debt of the person taxed, and to be recovered by distress or sale of the property in his possession at the time the warrant is issued, or by legal proceedings against such person. No authority is given to proceed against the property in the hands of the person taxed at the time the tax is imposed. It is the property in the possession of such person at the time the warrant is issued that is to be applied to the payment of the tax. The distinction between the method by which a tax upon personal property and upon real property may be enforced is thus made clear by the statute. As to real property, the tax is a lien upon the property. That lien, strictly speaking, does not attach to the land until the amount of the tax is fixed. See Barlow v. Bank, 63 N. Y. 400. It seems to be settled, however, "that, in respect to both real and personal property owned by a resident of the town or ward where the former is situate, the tax is imposed upon the person of such owner on account of the ownership of such property, and his liability to such tax is conclusively fixed by the completion and delivery of the roll." Rundell v. Lakey, 40 N. Y. 516. In Re Babcock, 115 N. Y. 455, 22 N. E. 263, Rundell v. Lakey was followed. It was there held that the delivery of the assessment rolls by the commissioners of taxes and assessments to the board of aldermen fixes the liability of the person taxed for the tax for that year. In that case it appeared that the testator died on July 2, 1887, owning real estate liable to taxation in the city of New York; that, previous to his death, his real estate had been assessed for the taxes of 1887, and the assessment rolls had been delivered to the aldermen

for the ascertainment of the amount of the tax and its extension by them upon such rolls.    It was held that the liability of the person taxed was conclusively fixed by the completion and delivery of this roll.

There is no evidence in the record before us as to when the roll of the assessment of the taxes for 1893 was delivered to the board of aldermen, but by statute it was required to have been delivered before the first Monday in July in each year. We will assume, therefore, that on the first Monday in July, 1893, this roll was delivered to the board of aldermen, and that then the tax was imposed upon the corporation.    Its liability to such tax was then conclusively fixed. The amount of the tax was not then ascertained, nor was it payable, but the liability of the corporation to pay the tax was fixed.    It appears by the record that, on the 25th of September following, attachments against this foreign corporation were obtained, and a levy made upon the property of the corporation under such attachments; that, subsequent to such levy, and before the 7th day of December, 1893, judgment was entered in these attachment suits in favor of the plaintiff, and execution issued thereon; that, prior to the 7th day of December, 1893, a receiver had been appointed of this foreign corporation under an order of the court of chancery of the state of New Jersey, the state under which the said corporation was organized; and that, on the 7th day of December, 1893, the said McMaster was appointed ancillary receiver in this state.    Subsequently, and on the 23d day of December, 1893, the sheriff was directed to deliver the property of the said corporation, which he held under the levy of the attachment and execution obtained by the appellant, to the ancillary receiver, who was directed to receive and hold the said property subject to all liens acquired thereon by any attachment and execution creditors prior to the appointment of a receiver.    By such order all priorities and all the rights of such creditors in respect to the several attachments and executions issued to said sheriff were reserved.    The order also provided that the receiver should dispose of the property, and that the proceeds of such disposition and sale should be subject to the same liens as now exist thereon, and with their present priorities, and reserving all rights of said creditors in respect thereto as aforesaid.    The property of this foreign corporation liable to this tax is not now in the hands of the receiver.    It has been sold by him, and the proceeds are in his hands, subject to the same liens as existed when the receiver obtained possession; the rights of all persons in and to the property being reserved.

The only claim that the receiver of taxes can have to be paid the amount of this tax out of the sum of money now in the hands of the receiver as the proceeds of the property sold by him, is that he is entitled, in the distribution of the funds of this corporation, to priority over the other creditors of the corporation; and we will assume that the receiver is entitled to such priority.    The question, then, is whether there are any funds in the hands of this receiver to be distributed among the creditors of the corporation.    At the time of the appointment of the receiver the sheriff held this property under the lien of an attachment against the property which had subsequently

been merged in an execution issued upon the judgment in an action upon which the attachment was granted. By section 674 of the Code, the sheriff, having made a levy under an attachment, is required to keep the property attached by him, or the proceeds of property sold, or of a demand collected by him, and to answer any judgment that may be obtained against the defendant in the action. By section 708 of the Code he is required, where an execution against the property is issued upon a judgment for the plaintiff in an action in which a warrant of attachment has been levied, to sell under the execution the personal property attached, or so much thereof as necessary, and apply the proceeds thereof to the payment of the execution. At the time, therefore, when this receiver was appointed, the sheriff was in possession of the property, and it was his duty to sell the property, and apply its proceeds to satisfy the execution issued upon the judgment obtained in the action under which the attachment had been levied. The plaintiffs in the attachment suit had the legal right to have the sheriff perform this duty,—had the right to ask the court to compel performance by the sheriff; or, if the sheriff neglected it, he would be liable to the plaintiffs who obtained the attachment. At that time the court steps in, appoints a receiver, requires the sheriff to deliver the property held by him under these levies in the attachment suits to the receiver, directs the receiver to sell the property, but reserves the lien which had attached to the property in favor of the judgment creditors, and directs that the proceeds of the sale shall be subject to the same lien as then existed upon the property. If the sheriff, under the authority of these sections of the Code, had sold this property, the proceeds thereof would have belonged to the plaintiff in the attachment suits, to be applied in satisfaction of the executions; and it seems quite clear that the receiver of taxes would have had no claim to be paid out of the proceeds in the hands of the sheriff. The statute requires the sheriff to sell, and to pay the proceeds to the execution creditors. The court transferred the possession of the property from the sheriff to the receiver for that purpose. The right of the plaintiffs in the attachment suit to have this property sold, and the proceeds applied to the payment of the execution, existed when the property was in the hands of the receiver, as it did when it was in the hands of the sheriff, and when the receiver came to distribute the proceeds. It was not a distribution of funds among creditors, but a payment to a particular creditor who has obtained a specific lien upon the property; not a preference over other creditors, which entitles him upon a marshaling of assets to be paid first, but a direct, specific lien upon certain specific property, under which he had the legal right to have that property sold, and its proceeds applied to the payment of his demand. The principle, therefore, applied in Re Receivership of Columbian Ins. Co., 3 Abb. Dec. 242, does not apply. In that case, at the date of the issuance of the warrant, the property was in the hands of the corporation. A receiver was subsequently appointed, who took possession of the property for the purpose of distributing it among the creditors according to law. Such assets consisted only of the residue remaining after the discharge of all antecedent claims entitled to priority of

payment under the settled rules of general law; and it was held that, in making such distribution, the court could not ignore the universal and familiar rule that claims of the government are entitled to a preference. The question presented there would have been the same as if here there had been no attachment and no execution, but the receiver had taken possession of the property in the hands of the corporation, to be distributed among its general creditors according to law. In such case, under the authority of In re Receivership of Columbian Ins. Co., supra, the receiver of taxes would have been entitled to be first paid; but, in this case, the property itself having been taken from the possession of the corporation by the sheriff, and a specific lien having attached, which, under the provision of the Code, entitled the creditor to have the property sold by the sheriff, and the proceeds thereof applied to the payment of the lien, such creditor, upon the sale of the property, was entitled to be paid the amount of his lien prior to that of any of the general creditors of the corporation who had no lien upon the property at the time of its sale; and, as it is conceded that the receiver of taxes had no lien upon the property at that time, the order below directing the payment by the receiver in the action to the receiver of taxes was erroneous. See Roraback v. Stebbins, 4 Abb. Dec. 100.

The order appealed from should, therefore, be reversed, and the total amount in the hands of the receiver directed to be paid to the appellant, with $10 costs and disbursements of this appeal. All concur.