THE SISTERS OF THE POOR OF ST. FRANCIS, Respondents, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK and EDWARD V. LOEW, Comptroller of said City, and ARTEMAS S. CADY, Clerk of Arrears, Appellants.[*]

*Exemption of real estate, situated in the city of New York, from taxation — if the title is transferred after the second Monday of January to a purchaser entitled to exemption from tax, it is not exempt from the taxes of the then current year.*

A transfer of the title to real estate situate in the city and county of New York between the second Monday of January, the time of the opening of the books of annual record, and the first day of May, the time of the closing of the books, does not affect the taxable status of the property for the current year, and does

[*] Decided January 9, 1889.

not entitle the property to exemption in a case where the property would have been exempt if the transfer had taken place prior to the opening of the books. The taxable status of the property is determined by its condition on the second Monday of January, and any changes occurring subsequent to that time do not authorize the commissioners to do anything more than to revise the valuation. *Clark* v. *Norton* (49 N. Y., 243) followed.

APPEAL from an interlocutory judgment rendered at a New York Special Term overruling a demurrer to the complaint, which was entered in the office of the clerk of the city and county of New York on October 18, 1888.

*George S. Coleman*, for the appellant.

*George Bliss*, for the respondent.

VAN BRUNT, P. J.:

The plaintiff is a corporation created by act of the legislature. (Chap. 201, Laws of 1866.) Its object being the gratuitous care of the sick, aged, infirm and poor, its real estate is not liable to taxation. In February, 1882, the plaintiff became possessed of certain property on One hundred and Ninth street, between First and Second avenues. At this time the same had been assessed for taxation and taxed by the city authorities. The plaintiff alleges that because of such ownership such property was exempt from taxation in 1882, and brought this action to restrain the defendants from collecting the taxes. The question presented upon this appeal is whether a transfer of title to real estate situate in the city and county of New York between the second Monday of January, the time of the opening of the books of annual record and the closing of the books on the first day of May, affects the taxable status of the property for the current year, and entitles it to exemption in a case where the property would have been exempt if the transfer had taken place prior to the opening of the books. Under the statute there seems to be three stages in the procedure for finally determining the tax. *First*. The listing and valuation of the property to be taxed between September and January. *Second*. The correction of assessed *valuations* between January and May. *Third*. The preparation of the proper tax books, the levying of the tax, and the delivery of the tax books to the proper officer for collection between May and September. It is conceded that if this real estate had been trans-

ferred prior to the second Monday of January, the owners of the estate would have been entitled to the immunity which the statute affords. And it is conceded, upon the part of the respondents, that had this transfer taken place subsequent to the first of May such transfer would have effected no change in the status of the estate in respect to taxation. There has been, however, no adjudication brought to the attention of the court upon the question as to what effect a transfer of title, between the second Monday of January and the first of May, has upon the status of the property in respect to taxation ; and this is the question involved upon this appeal.

It is necessary, in considering this question, to consider for a moment the various things which are done during these several stages which result in the complete levying of the tax. From September to the second Monday of January the deputy tax commissioners assess all real and personal estate within their districts and furnish the details to the commissioners of taxes and assessments under their oath. The results are set forth in books which are known as the annual record of the assessed valuation of real and personal estate. These books are opened on the second Monday of January for examination and correction and remain so until the first day of May. During this period parties deeming themselves aggrieved by the assessed valuation of their property may apply to the commissioners to have the same corrected, and the commissioners may, before the second day of April in each year, increase or diminish the assessed valuation of any real or personal estate in said city as, in their judgment, may be necessary for the equalization of taxation. On the first of May the books are closed and between that day and the first Monday of July the commissioners prepare assessment-rolls which, on that day, they transmit to the board of aldermen. The board examine the rolls, cause the proper rolls to be prepared, and on or before the first of September transmit the rolls to the receiver of taxes with the proper warrant for the collection of the tax as laid.

It will thus be seen that, during the time the books were in the possession of the commissioners of taxes and assessments, namely, from the second Monday of January to the first of May, they have the right, under certain circumstances, to alter the valuation of real and personal estate, but there is no provision authorizing them to enter either real or personal estate for taxation. The provisions of

the statute refer to an alteration of the valuation and nothing more. Under this condition of the law it has been held that, between these dates, the tax commissioners have no power to insert for purposes of taxation property which has been acquired subsequent to the second Monday of January; which seems to be an indication that their powers are limited simply to an alteration of the valuation, and do not extend to an insertion of or a taking away from taxation any property which may have been acquired subsequent to the second Monday of January. In the case of *Clark* v. *Norton* (49 N. Y., 243) it is expressly held that the assessors could not lawfully, during the time given for the review and revision of the assessment as made, place upon the roll other property, or essentially or materially change the roll by addition to the assessment of individuals other property, especially by assessing them for property acquired after the time limited for the preparation of the roll.

The same principle is recognized in other cases, which it is not necessary to cite; and the result is that it is the law of this State, firmly established by judicial decisions, that the assessors cannot tax property which has been acquired subsequent to the second Monday of January; and, therefore, if a charitable or religious corporation, the owner of real estate which is exempt from taxation, should, subsequent to the second Monday of January, sell the same to a person in whose hands it would be liable to taxation, the assessors have no power to insert that property upon the roll for the purposes of taxation. This being the case, where property has already been put upon the roll for purposes of taxation and a valuation made, where is the authority of the tax commissioners to strike it from the roll because it has been conveyed to an association whose real estate is not liable to taxation by reason of the uses to which it is devoted? It would seem if they cannot add to the roll because of a change of ownership subsequent to the second Monday of January, they have no power to strike from the roll for that reason. In other words, the taxable status of the property is determined by its condition on the second Monday of January, and whatever changes occur subsequent to that time do not authorize the commissioners to do anything more than to revise the valuation. There must be some fixed period during the progress of this taxation, at which it can be determined as to whether property is taxable or not taxable.

It is claimed that in the case of the *Association for Colored Orphans* v. *The Mayor* (104 N. Y., 590), the opinion indicates that the court were of opinion that the assessable character of the property is not fully determined until the closing of the books on the first of May. A reading of that opinion, however, shows that no such question was involved in the case, and that all that the court say is that no alteration can be made in the books after the closing thereof in May. Upon the contrary, they say that it is clear that the general scheme of taxation is to enter as assessable all property which is of that character up to the time when the record book is open for examination. If then assessable, its character would seem to be fixed for the year, which is in accordance with the views heretofore enunciated, and certainly does not support the deduction which is drawn from the language used in this case in reference to the impossibility of altering the record after the books are closed on the first of May. Determining the question as to whether real estate is taxable is in no way revising the valuation of the property. This valuation is made whether the property is taxable or exempt from taxation; and, as already suggested, the only power conferred upon the commissioners, to be exercised between the second Monday of January and the first of May, is to increase or diminish the valuation of the property for the purposes of taxation. It would seem, therefore, that property acquired subsequent to the second Monday of January, which was then the subject-matter of taxation, cannot be exempted by reason of such change of ownership.

The judgment should be reversed and the demurrer sustained, with costs.

BRADY and MACOMBER, JJ., concurred.

Judgment reversed and demurrer sustained, with costs.