The People ex rel. The American Bible Society, Respondent, *v.* The Commissioners of Taxes and Assessments for the City and County of New York, Appellant.

The legislature may release property which has been assessed for taxation, and this power may be exercised in any way and at any time during and before the completion of the proceedings for taxation.

Under the act of 1893 (Chap. 498, Laws of 1893), exempting from taxation so much of the real estate of certain religious corporations as is used exclusively for its corporate purposes, which act, by its terms, declares that it "shall take effect immediately," a corporation included in the act is exempt from a·tax upon its real estate so used for the year 1893, where the assessment had not been completed, and so placed beyond the power of the taxing officers to change, prior to the time when the act became a law.

Said act became a law on April 29, 1893. All of the real estate of the relator, a religious corporation in the city of New York, was assessed for that year. *Held,* that, as by the New York Consolidation Act (Chap. 410, Laws of 1882), the books containing the "annual record of the assessed valuation of real and personal estate" remain open until the first day of May, and up to that time the commissioners of assessment and taxation have power to correct them in respect to valuations, the real estate used exclusively by the corporation for its own purposes was exempted from taxation; that the commissioners were authorized and required to remove the entry thereof from the books; and that a mandamus requiring the commissioners to remit the tax assessed thereon was properly granted.

(Argued March 23, 1894; decided May 1, 1894.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made March 6, 1894, which affirmed an order of Special Term directing a writ of mandamus to issue to defendants, commanding them to remit of the tax of 1893 levied on the real estate of the relator so ·much thereof as was assessed upon that portion of the real estate used by the relator exclusively for its own purposes.

The facts, so far as material, are stated in the opinion.

*George S. Coleman* for appellants. A statute is always presumed to be prospective in its operation unless the contrary is expressly provided, or is necessarily to be inferred.

1894.] People ex rel. A. B. Society *v.* Commissioners. 349

N. Y. Rep.]        Opinion of the Court, per Gray, J.

(*McMahon* v. *Beekman*, 65 How. Pr. 427 ; *Mygatt* v. *Washburne*, 15 N. Y. 316 ; Laws of 1890, chap. 494 ; *Reid* v. *Mayor, etc.,* 68 Hun, 116 ; *People ex rel.* v. *McCall,* 94 N. Y. 590 ; *In re Miller,* 110 id. 216 ; Laws of 1880, chap. 542 ; *People ex rel.* v. *Davenport,* 91 N. Y. 585.)

*Frederick S. Duncan* for respondent. The American Bible Society is a religious and missionary society. (Laws 1893, chap. 498.) Chapter 498, Laws 1893, going into effect on April 29, 1893, exempted the property therein mentioned from the tax of 1893. (*Valentine* v. *Comrs.,* 41 Hun, 373 ; Cooley on Taxation [2d ed.], 18 ; *Ketchum* v. *P. R. R. Co.,* 4 Dill. 41 ; *Bailey* v. *Mason,* 4 Minn. 550 ; 23 La. Ann. 511 ; Smith's Comm. on Stat. Const. 890 ; Laws of 1882, chap. 410, § 822.) No retroactive effect need be given to the act of April 29, 1893, in order to remit the tax of that year, because the tax for 1893 was not levied until after the act went into effect. (*In re Babcock,* 115 N. Y. 456 ; *Ketchum* v. *P. R. R. Co.,* 4 Dill. 41.) The argument of the commissioners that the affirmance of the order of the courts below will work injustice to New York county, because it has to pay its quota of the state tax prior to its collection from the taxpayer, is untenable. (*Ketchum* v. *P. R. R. Co.,* 4 Dill. 41.)

Gray, J. The relator was one of the religious societies, or corporations, referred to in chapter 498 of the Laws of 1893, and claims to have been exempted from taxation for the year 1893, by force of the provisions of that act. Section I provided that the real property of such a corporation, " shall be exempt from taxation " and section II provided that " this act shall take effect immediately." It became a law, with the governor's approval, on April 29th, 1893. The sole question presented was whether the language of the act should be construed to have prevented any tax from being imposed or collected for the year 1893. We think that the order of the Special Term, directing the commissioners (through the writ of mandamus) to remit the tax for that year, has been prop-

erly affirmed below. It is true that there is nothing in the act authorizing us to give retroactive effect to its provisions; a construction which, in the absence of language containing an unmistakable direction, legislative acts should not receive. But we are not called upon to give such a construction. The point is whether immediate effect could be given to the legislative provision. Could property, which then was in the course of assessment for purposes of taxation, be withdrawn therefrom? All we have as to the legislative intention, when the act should be operative, is what we read in the second section. While the legislature commanded that its act should have immediate effect, we should not, and we need not here, infer any intention to discharge or release a tax, if, under the general tax laws, the proceedings for taxation had arrived at that stage, when the assessment was an unalterable fact, and beyond the power of the taxing officers to change. The legislative body will be presumed to be acquainted with the established plan of taxation throughout the state and to know of the processes, or successive steps, prescribed by law to be taken by taxing officers, in the assessment of property, subject to taxation, and in the imposition of the amount of the tax. They are presumed to know that under the plan, as prescribed for the city and county of New York in the Consolidation Act, there are limitations of time, which bear upon the liability of persons and the assessable character of property and the general powers of taxing officers. In the city and county of New York the books, which contain the "annual record of the assessed valuation of real and personal estate," are opened upon the second Monday of January and remain open until the first day of May. Within that period of time the commissioners have the power to correct the books; but on the first of May they are closed by direction of the statute. We have had occasion to consider the law, which thus regulates taxation in the city and county of New York, and it must be regarded as settled that the assessable character of property is fixed on the second Monday

of January. There is power conferred upon the commissioners by the statute, during the time the tax books are open, to correct them with respect to valuations; but, on the first day of May the books are closed by law, and there is no provision for the amendment, or alteration of the record. (Consol. Act, § 817; *Sisters of St. Francis* v. *Mayor, etc.,* 51 Hun, 355; affirmed 112 N. Y. 677; *Association for Colored Orphans, etc.,* v. *Mayor, etc.,* 104 id. 581.)

The judicial functions of the tax commissioners terminate upon the first day of May, and thereafter the duties are of a clerical nature. But it is indisputable that the legislature may release property, which has been assessed for taxation. The power over the subject is unlimited and can be exercised in any way and at any time during the proceedings for taxation. If it is claimed that a legislative enactment has arrested those proceedings at a stage when, by the general law, the tax books are closed and the assessable character of the property has been fixed, beyond the power of the taxing officers to alter, the language must be very explicit to warrant them in thereafter remitting the tax. In the *Colored Orphan Asylum* case (*supra*), the property, for which exemption was claimed, was acquired on July 31st and its claim was refused, upon the ground that as with the closing of the record on the first day of May the power of amendment or alteration had ended, the exemption given in the Revised Statutes must be regarded as prospective in its operation. In the present case, however, we have the command of the legislature, to exempt the relator, given at a time when the records, or tax books, are recognized by the general law to be open for correction. The implication, from the statutory direction that they shall be open, is that up to the date for their closing no basis is absolutely fixed for the subsequent proceedings for extending the amount of the tax upon the assessment rolls. We feel constrained to hold that the act having been given immediate operation, at a time when the tax books were directed by law to be open, the effect was to withdraw the property affected from all liability to taxation, and that the

tax commissioners actually had a warrant in law for the correction of the tax books by removing therefrom the entry of the property in question. We recognize the possibility that our decision may operate to release a large amount of property assessed for 1893, and that our construction ascribes to the legislature an intention which it may not, perhaps, have had. However that may be, we have, as our only guide, the language of the act; which, for being imperative as to the time for its provision to take effect, must be considered with reference to the existing condition of the proceedings for the imposition of a tax. That it would have been better legislation, by clear and appropriate language, to prevent any doubt with reference to the application of the exemption to pending taxation proceedings throughout the state, is one of those reflections not infrequently suggested by a consideration of legislative work.

The order should be affirmed, with costs.

All concur.

Order affirmed.