quent to that there was an adjournment to a future time and place, such adjournment would be a waiver of the tender already made; and then, under the rule stated in Ziehen v. Smith, 148 N. Y. 558, 42 N. E. 1080, before either party would be in default a new tender would be required.

As to the objections to the plaintiff's title, they are evidently of a character which could be readily obviated. And so far as the interest of the mortgage with the insurance company being at 6 per cent., instead of 5· per cent., the mortgage had but a few days to run. It had been executed under an agreement by which the interest was to be reduced when the houses were completed. That agreement had been executed by a verbal understanding, and ·the receipt of 5 per cent. for two years; and the evidence is that the company were quite willing to give a formal agreement, and did subsequently give such an agreement. The mortgage, however, had but a few days to run, and the difference in the interest would .be quite small, and not material.

---

### In re AMERICAN FINE ARTS SOC.

(Supreme Court, Appellate Division, First Department. June 5, 1896.)

TAXATION—WHEN LIABILITY FOR TAX BECOMES FIXED.
    The assessment being complete, and the tax books closed to further entries on May 1st, the status of property for purposes of taxation is then fixed; and an act of the legislature exempting property from taxation which does not take effect until after that date applies only to taxation for future years.

Appeal from special term, New York county.

Application of the American Fine Arts Society for a peremptory writ of mandamus directed to Edward P. Barker, Theodore Sutro, and James S. Wells, commissioners of assessments in the city and county of New York. From an order denying the writ, the applicant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Herbert Barry, for appellant.
D. J. Dean, for respondents.

INGRAHAM, J. By an act of the legislature which took effect on May 3, 1895, the real and personal property belonging to the appellant became exempt from taxation. On May 1, 1895, the assessment for the tax to be levied for that year became complete, such assessment being entered in certain books, entitled the "Annual Record of the Assessed Valuation of Real and Personal Estate"; and such books were on May 1, 1895, closed, to enable the commissioners to prepare assessment rolls. No power existed to change such assessments, except where application for reduction of assessment had been made to the commissioners prior to such 1st day of May, 1895.

This question has been determined by the court of appeals in the case of Association for Benefit of Colored Orphans v. Mayor, etc., 104 N. Y. 590, 12 N. E. 279, and we think that case is decisive of the question here presented. In that case the plaintiff had become the owner of real estate after the 1st day of May, but before any tax was actually imposed; and it was held that the exemption did not apply for that year, the court saying, after a review of the provisions of the consolidation act:

"From this review of the law, it is seen that the initial steps to levy a tax commence in September of one year, and are not concluded by the receipt of the tax warrants by the receiver of taxes until the September following, covering a whole year in the process. Even if real estate not on the annual record of assessed valuation at the time when the books are open for examination could be placed on, or if real estate that is on could be taken from the record, up to the time of the closing thereof in the following May, it is clear that no such alteration could be made after that date; and it is equally clear that the general scheme of taxation is to enter as assessable that property which is of that character up to the time when the record book is open for examination. If then assessable, its character would seem to be fixed for the year; but in any event, if assessable and assessed at the time the books close, it must remain so for purposes of taxation under the assessment roll that is to be compiled from the record for that year. There is no power anywhere after that to take real estate out of that record and out of the roll, because, since the closing of the record, the property has passed into the hands of an institution exempt from taxation. The exemption must be held in such a case as this to be prospective in its operation. * * * Whether or not the tax had become a lien at the time when the plaintiff took title is a fact of no moment. It may be conceded that technically there was then no lien. For the reasons already given, the property was, nevertheless, rightly on the roll, and could not be legally taken off; and the tax was properly laid, and was payable by the plaintiff if it desired to clear its title to the property."

And in the case of People v. Commissioners of Taxes & Assessments, 142 N. Y. 348, 37 N. E. 116, it was held that an act passed prior to May 1st relieved the property from the tax for the current year; and the court distinguished the Colored Orphan Asylum Case, supra, on the ground that, as with the closing of the record on the 1st day of May, the power of amendment or alteration had ended, the exemption given in the Revised Statutes must be regarded as prospective in its operation; and that the act having been given immediate operation, at a time when the tax books were directed by law to be open, the effect was to withdraw the property affected from all liabilities to taxation; and that then the tax commissioners actually had a warrant in law for the correction of the tax books, by removing therefrom the entry of the property in question. It is impossible, however, to distinguish this case from the Colored Orphan Asylum Case, for here the exemption did not take effect until after the records or tax books had ceased to be open for correction. This act does not have a retroactive effect, but simply provides that thenceforth the property of the appellant should not be liable to taxation. The assessable character of this property, however, had then been fixed for the year; and, under the authority of the Colored Orphan Asylum Case, supra, it must remain so for the purposes of taxation upon the assessment roll for the year.

In Re Babcock, 115 N. Y. 457, 22 N. E. 263, it was held, after referring to the statute regulating the fixing of taxes in the city of New York:

"It is therefore provided that the enumerations of persons and property liable to taxation in the city of New York shall be had between the first day of September and the second Monday of January thereafter in every year. Provision is made for alterations in the valuations of property up to May first in every year; but the taxable estates of persons and property in that city become established in January, and cannot be changed or affected by subsequent occurrences."

The same principle was applied in the case of Sisters of St. Francis v. Mayor, etc., 51 Hun, 355, 3 N. Y. Supp. 433, affirmed, on the opinion of the general term, 112 N. Y. 667, 20 N. E. 417.

We think it clear, therefore, that, upon the 1st day of May, the character of this real estate as to its being subject to a tax for that year became fixed; and that, the property thus becoming taxable for that year, an act subsequently passed relieving such property from taxation, and having no retroactive effect, could not affect the taxable condition of the property for such year.

The order appealed from is right therefore, and should be affirmed, with $10 costs and disbursements. All concur.