BINGHAMTON TRUST CO. v. CITY OF BINGHAMTON.

(Supreme Court, Appellate Division, Third Department. May 23, 1902.)

1. MUNICIPAL CHARTER—ASSESSMENT ROLL—COMPLETION—REMOVAL OF PROPERTY THEREFROM.

The city charter of Binghamton provides that the annual assessment shall be completed by September 1st; the assessors, after hearing objections and making corrections, shall file a correct assessment roll by October 1st; upon such roll the state and county tax shall be levied in December of each year; for 10 days after the first Tuesday in April the assessors shall meet to transfer property on the roll that has been sold, and to add thereto omitted property; and the roll "so revised" shall be the assessment roll for the city tax. ·Held that, the roll not being completed until after the April meeting, the assessors could at that meeting correct it by removing therefrom the assessment on property previously exempted by statute.

2. SAME—CONSTRUCTION.

The rule that statutes of exemption, purely, should be strictly construed, does not apply to an act imposing an annual tax upon the corporate stock of trust companies, and exempting them from all other forms of taxation, as it does not relieve property from taxation, but simply changes the method thereof.

3. CORPORATION TAX—EFFECT AS TO OTHER TAXATION.

Under Laws 1901, c. 132, which requires trust companies to pay an annual tax on their corporate stock, and exempts them from all other forms of taxation, which act went into effect March 21, 1901, a trust company assessed for general taxes for that year was entitled to have its property removed from the assessment roll; it being the intent of the act to relieve trust companies from all other taxation from the time it went into effect.

Parker, P. J., dissenting.

Action by the Binghamton Trust Company against the city of Binghamton. Controversy submitted pursuant to the provisions of the Code of Civil Procedure. Judgment for plaintiff.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

W. J. Welsh, for plaintiff.

Frank Stewart, for defendant.

SMITH, J. Plaintiff here seeks to recover from defendant the sum of $1,702.40 paid as the city tax for 1901, with interest thereupon from November 21, 1901. It is agreed that this tax was paid under duress, and that plaintiff is entitled to the judgment asked, provided the exaction of the tax was unwarranted by law. Plaintiff claims exemption from said tax under chapter 132, Laws 1901. This act amends the general tax laws of the state, and requires every trust company organized under the laws of the state to pay annually "for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity an annual tax which shall be equal to one per centum on the amount of its capital stock, surplus and undivided profits." This tax is made payable on or before the 1st day of September of each year, and it is further provided that such trust companies "shall be exempt from assessment and taxation for all other purposes." This exemption is conditioned upon

payment of certain other taxes which it is agreed have been paid. The act, by its terms, took effect immediately, and became a law upon the 21st day of March, 1901. The city tax of Binghamton is levied and collected under the city charter. Examining that charter, we find the following provisions material to this question: "The annual assessment of property in said city shall be made during the months of May, June, July and August, and shall be completed by the assessors thereof on or before the first day of September in each year." Thereafter for 10 days the assessors shall meet and hear all allegations and objections of all persons interested, and to review and correct said roll. On or before the 1st day of October the assessors shall make and file in the office of the clerk a "correct and complete assessment roll," of which the supervisors of said city shall make a correct copy for the use of the supervisors of Broome county, as the assessment roll of said city. Upon such roll as completed the state and county tax shall be levied in December of each year. For 10 days after the first Tuesday in April of each year the said assessors shall meet for the purpose of transferring the assessment of any property that has been sold, and adding to the assessment roll any property liable to taxation and assessment which may have been omitted therefrom. After having made such transfers and such additions, they are to deliver the same to the city clerk, and "such roll so revised shall be the assessment roll for the city tax." "All sums to be raised by a general tax in pursuance of this act shall, except as herein otherwise provided, be assessed and rated upon and among the owners of real and personal estate, incorporated companies and associations named in the revised assessment roll in proportion to the valuation therein stated in the same manner and proportion as near as may be as taxes in and for the county of Broome are rated and assessed." "The sum rated and assessed on the estate of each person, company, corporation or association shall be set opposite the name of such person, company, corporation or association respectively, in the last column of the tax roll, which roll shall be a copy of the revised assessment roll, and shall be corrected, completed and filed with the city clerk on or before the first day of July in each year, and which when so corrected, completed and filed shall be a lien on the real estate described therein."

In People v. Commissioners of Taxes & Assessments, 142 N. Y. 348, 37 N. E. 116, the legislature had released relator's property from taxation by a law which took effect April 29, 1893. By the procedure for the assessment and collection of taxes made applicable to the city of New York, the assessment roll was not completed until the 30th day of May, until which time the assessments were subject to correction by the commissioners. The court there decided that, inasmuch as the act became a law two days before the assessment roll became complete, it operated to relieve the relator from the taxes levied for that year. Judge Gray, in writing for a unanimous court, at page 351, 142 N. Y., and page 117, 37 N. E., says:

"The judicial functions of the tax commissioners terminate upon the 1st day of May, and thereafter the duties are of a clerical nature. But it is indisputable that the legislature may release property which has been

assessed for taxation. The power over the subject is unlimited, and can be exercised in any way and at any time during the proceedings for taxation. If it is claimed that a legislative enactment has arrested those proceedings at a stage when by the general law the tax books are closed, and the assessable character of the property has been fixed beyond the power of the taxing officers to alter, the language must be very explicit to warrant them in thereafter remitting the tax. In the Colored Orphan Asylum Case, 104 N. Y. 581, 12 N. E. 279, the property for which exemption was claimed was acquired on July 31st, and its claim was refused upon the ground that as with the closing of the record, on the 1st day of May, the power of amendment or alteration had ended, the exemption given in the Revised Statutes must be regarded as prospective in its operation. In the present case, however, we have the command of the legislature, to exempt the relator, given at a time when the records or tax books are recognized by the general law to be open for correction. The implication from the statutory direction that they shall be open is that up to the date for their closing no basis is absolutely fixed for the subsequent proceedings for extending the amount of the tax upon the assessment rolls. We feel constrained to hold that, the act having been given immediate operation at a time when the tax books were directed by law to be open, the effect was to withdraw the property affected from all liability to taxation, and that the tax commissioners actually had a warrant in law for the correction of the tax books by removing therefrom the entry of the property in question."

In the case cited it will be borne in mind that the statute construed was a statute of exemption, purely. Such statutes receive strict construction. In Suth. St. Const. § 364, the rule is thus stated:

"Legislation which is claimed to relieve any species of property from its due proportion of the general burdens of government should be so clear that there can be neither reasonable doubt nor controversy about its terms. The language must be such as leaves no room for discussion. Doubts must be resolved against the exemption."

The case cited recognizes, however, the power of the legislature to relieve property even from a tax assessed, if the intent be manifest. The power to strike from the roll was there found not merely because of the power left in the commissioners to correct the roll, but also because at the time of the passage of the act the assessment was incomplete and, "no basis [was] absolutely fixed for the subsequent proceedings for extending the amount of the tax upon the assessment roll."

The statute here for construction is not a statute of exemption, as such. No property is here seeking to be relieved "from its due proportion of the general burdens of government." The rule of taxation, simply, is changed. Moreover, if defendant's contention prevail, the plaintiff will be subject to double tax for the year 1901,—will be forced to make double contribution to the expenses of government. Against such an intent the law most strongly presumes. In People v. Home Ins. Co., 92 N. Y. 346, it is said:

"In the construction of the effect and meaning of laws imposing taxes, it would undoubtedly be the duty of the court to so construe them, if possible, as to avoid unequal and double taxation."

In People v. Coleman, 135 N. Y. 235, 31 N. E. 1022, the opinion reads:

"The Revised Statutes neither exempt the bank nor the depositors therein. But there could not be double taxation. If that had been attempted, some way would have been found to defeat it, as that would be against public policy, the purpose of the laws, and natural justice. Whether the legisla-

ture may constitutionally impose double taxation, its purpose to do so can never be inferred, but must plainly appear."

In Re Swift, 137 N. Y. 87, 32 N. E. 1098, 18 L. R. A. 709, the court says:

"We should incline against a construction which might lead to double taxation."

Can there be found, then, any indication of an intent to exempt the plaintiff from the city tax for 1901? The act became a law upon March 21st of 1901. By its terms it is provided that it shall take effect immediately, and trust companies are thereby exempted from assessment and taxation for all other purposes. The creation of a new liability is presumably in lieu of the old liability. At the time when the act became effective the revised assessment roll was not completed. At the April meeting of the assessors, power was given them to transfer property upon the roll, and to add to the roll property which had been omitted. The ratio of tax which each taxpayer was to pay could be and was at that meeting changed. Until after that meeting the revised roll upon which the city tax is laid was subject to correction. Until then "no basis is absolutely fixed for the subsequent proceedings for extending the amount of tax upon the assessment roll." Having in mind the distinction between the rule of construction of a statute purely of exemption, and the rule of construction of a statute not of exemption, but which is claimed to impose upon the taxpayer a double burden, we think there is clearly manifest an intent in the legislature to make the act effective as of the date of its passage, and to relieve the relator from payment of all taxes thereafter, save those provided in the act itself. The statute itself gave to the assessors their warrant to strike this property from the revised roll upon which the city tax was laid, and such city tax for the year 1901 was unlawfully exacted of plaintiff.

I am referred to no authority which to my mind holds a contrary rule of law. All of the cases cited in defendant's brief are, with one exception, cases in which are construed statutes of exemption, as such. In the case of Ætna Ins. Co. v. City of New York, 153 N. Y. 332, 47 N. E. 593, the statute was not purely a statute of exemption; but the act did not take effect until June 15th, more than 45 days after the assessment roll had become completed, with no power whatever left in the commissioners to vary the same.

The plaintiff should have judgment.

Judgment ordered for the plaintiff for the sum of $1,702.40, with interest from November 21, 1901, with costs of this action. All concur, except PARKER, P. J., who dissents.

PARKER, P. J. (dissenting). The plaintiff claims exemption from a tax assessed and collected against it for the year 1901 by the city of Binghamton under the general provisions of the city charter. The exemption is claimed by reason of section 4 of chapter 132 of the Laws of 1901. By such last-named act, section 187 of chapter 908 of the Laws of 1896, known as the "General Tax Law," is amended so as to provide that every trust company shall pay upon its franchise an annual tax to the state, which is therein specified; and such fourth

section substantially provides that such trust companies so taxable shall be exempt from assessment and taxation for all other purposes. That act became a law March 21, 1901. The city claims that such act does not operate to relieve the defendant from the city tax which was lawfully assessed against it prior to the time the law took effect. It seems to be well settled by the following cases that an act which by its terms is given no more retroactive effect than is specified in this act does not operate to exempt property upon which an assessment has been fully completed prior to the time such act takes effect. See In re American Fine Arts Soc., 6 App. Div. 496, 39 N. Y. Supp. 564; Id., 151 N. Y. 621, 45 N. E. 1131; Sisters of Poor of St. Francis v. Mayor, etc., of New York, 51 Hun, 355, 3 N. Y. Supp. 433; Id., 112 N. Y. 677, 20 N. E. 417; Association for Benefit of Colored Orphans v. Same, 104 N. Y. 581, 12 N. E. 279; In re Babcock, 115 N. Y. 450, 22 N. E. 263; People v. Commissioners of Taxes and Assessments, 142 N. Y. 348, 37 N. E. 116; Ætna Ins. Co. v. City of New York, 153 N. Y. 331, 47 N. E. 593. And in the last-named case it is held that an assessment may be considered fully completed, although it has not been extended on the roll, and a warrant for its collection issued.

The method of levying taxes prescribed by the charter of the city of Binghamton is substantially as follows: In July and August of each year the city assessors assess all the property in the city, by ascertaining and valuing it in the usual way; and on or before the 1st day of September in each year such assessments must be entered alphabetically in at least four separate books, to be known, collectively, as the "Assessment Roll of the City of Binghamton." Immediately upon the completion of such roll, the assessors must deposit it with the city clerk for examination and inspection by all persons interested. They must then give notice that for 10 days they will sit to hear objections, etc., and to review and correct the rolls, and upon such days such proceedings are taken as are usually taken upon what are known as "grievance days"; and during that time the assessors are given powers of correction as are given to, and are controlled by the provision of law applicable to, the town assessors throughout the state. On or before the 1st day of October in each year the assessors must make and file in the office of the clerk "the correct and complete assessment roll," identifying each volume, except the last, by signing it, and to the last volume they must attach the oath required by law; and thereupon they must give the notice which fixes and limits the time within which any person aggrieved may review by certiorari the assessment against him. The supervisor of the city then causes a copy of such "completed roll" to be made for the use of the board of supervisors of the county of Broome, and from such roll the property within the city is taxed for the state and county tax. It is further provided by such charter that the assessors, after giving 10 days' notice, shall attend for 10 days, commencing on the first Tuesday in April of each year, at their office, to transfer the assessment of any property sold since the perfecting of such assessment roll, from the person to whom it was then assessed to the person to whom it has since been sold, in all cases where they had acquired

satisfactory proof of such a sale. They are also given the power during such 10 days "to add to the assessment roll any property liable to taxation and the assessment thereof, which may have been omitted therefrom," on personal notice given to the owner thereof. The assessors are required to then "make a true copy of each volume of said assessment roll, with all such transfers made as aforesaid, and all the omitted property and the assessment thereof added by them to said roll, inserted in such copies, and on or before the fourth Tuesday in April in each year deliver the same to the city clerk, with an affidavit annexed," etc., "to the effect that the foregoing is a true copy of volume (specifying the number) of their assessment rolls for the city of Binghamton, with all the transfers made as aforesaid and with all the omitted property and the assessment thereof added by them as aforesaid inserted therein, and that in no other respect has such copy so revised been altered from their said assessment roll. Such roll so revised shall be the assessment roll for the city tax." The roll then passes from the assessors into the custody of the officers whose duty it is to extend the tax to be raised that year for city purposes.

This plaintiff was assessed prior to September 1, 1900, $100,000, and its name appears on the assessment roll which was filed with the city clerk on October 1, 1900, as liable for that amount. Such roll was verified and sworn to by the assessors, and the notice which fixed the limit within which this plaintiff could have reviewed such assessment by certiorari was duly published, and the tax against this plaintiff for its share of the state and county taxes for the year 1900 was fixed by the board of supervisors from the assessment appearing thereon, and was subsequently paid by it. On the first Tuesday of April, 1901, the assessors met and performed the duties required from them as above stated, but made no change whatever in the assessment of $100,000 against this plaintiff. They declined to take such assessment from the roll, notwithstanding the act of March 21, 1901, had then become a law. And thus the real question between the parties is presented,—whether under such proceedings this plaintiff had been so assessed prior to March 21, 1901, that the exemption given by such statute should apply to such assessment. It is apparent that under such a method of assessment the assessment roll upon which the city tax was to be extended was not on March 21, 1901, entirely completed. The assessors had the power at their meeting in April to increase the total amount of property on the roll by adding thereto such property as they ascertained had been omitted in the previous September; and thus their action in April might affect the assessment against this plaintiff as it stood on October 1, 1900, so that its proportion to the whole property assessed might be slightly diminished. It is equally apparent, however, that, as to the assessment itself, the assessors after October 1, 1900, were utterly powerless to in any manner change it. After that date they had no power to increase or diminish its valuation, nor to strike it from the roll. After October 1st the plaintiff's grievance day had passed, and its liability to pay a tax upon its personal property, to the extent of $100,000, was fixed, so far as the assessors were concerned.

The plaintiff argues that the assessors in April had the power to

change such liability from the plaintiff to another in case of a sale. True, they had that power, provided there had been a sale. But it is not claimed that such fact exists in this case, and hence such power has no applicability to this case. As to that assessment of $100,000 against this plaintiff, the assessors never, after October 1, 1900, had any power to change it, nor to in any way affect it, save that by adding omitted property to the roll they might slightly change the ratio which it bore to the whole roll.

The plaintiff claims that because the assessors did not lose this right to so affect that ratio until after March 21, 1901, the assessment against the plaintiff was incomplete. Its counsel argues that so long as the assessors have control of the roll, and the power to act judicially in any manner concerning it, so long the assessment against every person thereon is incomplete; and he claims that a careful examination of the cases above cited will show that such was the principle upon which they were decided. Each of those cases concerns the taxation of property in New York City. The method of assessment and taxation there adopted is substantially as follows: Between September and the second Monday of January all the property in the city is listed and valued for taxation by the deputy tax commissioners, and entered upon books which are known as the "Annual Record of the Assessed Valuation of Real and Personal Estate." Such record is on the second Tuesday of January delivered by them to the tax commissioners, and by them kept open at their office for inspection and correction, and remains so until the 1st day of May. During this period parties aggrieved by the assessed valuation of their property thereon may, upon application to the commissioners, have it corrected. On May 1st the books are closed, and between then and the first Monday of July the commissioners prepare from such corrected books the assessment rolls for the several wards of the city, and transmit them to the aldermen, by whom the tax against each assessment thereon is extended on or before the following September. Under this system the cases above cited have settled the following propositions: Property appearing upon the annual records, etc., upon the second Monday of January, is so far assessed for the current year that it is not entitled to exemption, although thereafter, and before May 1st, it is transferred to a party whose property is totally exempt from taxation in such city. Sisters of Poor of St. Francis v. Mayor, etc., of New York, 51 Hun, 355, 3 N. Y. Supp. 433, affirmed on opinion below in 112 N. Y. 677, 20 N. E. 417; Association for Benefit of Colored Orphans v. Same, 104 N. Y. 581, 12 N. E. 279. That property so appearing on the "annual records," etc., at that date, is "assessed," within the meaning of the statute requiring executors to pay "taxes assessed upon the estate of the deceased previous to his death," etc. In re Babcock, 115 N. Y. 450, 456, 22 N. E. 263. In this latter case it was claimed the executors should not pay the tax against the testator's property, who had died on July 2d, because the amount thereof had not then been ascertained and extended upon the roll. The court discuss the meaning of the phrase "taxes assessed," and hold "that the taxable estates of persons and property become established in January, and

cannot be changed or affected by subsequent occurrences." Pages. 457, 458, 115 N. Y., and pages 264, 265, 22 N. E. That, where an act which takes effect after the 1st day of May and has no retroactive provision, exempts property in New York City from taxation, the exemption does not affect the taxable condition of the property for that year. In re American Fine Arts Soc., 6 App. Div. 496, 39 N. Y. Supp. 564, affirmed on opinion below in 151 N. Y. 621, 45 N. E. 1131. The principle upon which the decisions are placed is that the assessors having no power to change the assessments after May 1st, except when an application for a reduction had been made prior to· that date, the character of such real estate, as to its being subject to a tax for that year, became fixed, and hence it was not affected by the subsequent act. In the American Bible Soc. Case, 142 N. Y. 348, 37 N. E. 116, the question was presented whether property appearing on "the annual records," etc., was exempted from taxation under the provisions of an act which took effect before May 1, viz.,. April 29, 1893. The exemption in such act was not in terms given a retroactive effect, and was substantially like the one before us. The court held that the exemption was operative, because the assessment against the property in question had not then been completed. In discussing that question the court, at page 350, 142 N. Y., and page 116, 37 N. E., said:

"While the legislature commanded that its act should have immediate effect, we should not, and we need not here, infer any intention to discharge or release a tax, if, under the general tax laws, the proceedings for taxation have arrived at that stage when the assessment was an unalterable fact, and beyond the power of the taxing officers to change."

Again, on page 351, 142 N. Y., and page 117, 37 N. E., it is said:

"If it is claimed that a legislative enactment has arrested these proceedings at a stage when, by the general law, the tax books are closed, and the assessable character of the property has been fixed beyond the power of the taxing officers to alter, the language must be very clear and explicit to· warrant them in thereafter remitting the tax."

Again, on page 350, 142 N. Y., and page 117, 37 N. E., it is said:

"It must be regarded as settled that the assessable character of property is fixed on the second Monday of January."

The opinion then concludes that the power to correct the tax books, with respect to valuations, being open until May 1st, the assessment could not be deemed completed, and the property was therefore subject to the provisions of the exempting act.

In the Ætna Ins. Co. Case, 153 N. Y. 331, 47 N. E. 593, it was held that an act exempting certain property in the city of New York from taxation, which did not take effect until June 15, 1886, did not apply to property which had been assessed upon the "annual record," etc., of that year. In that case the claim was sharply and distinctly urged that, as the tax had not been actually perfected by extending it upon the assessment roll, it was exempted from the taxes of that year. The court overruled that claim, and stated in the opinion that it could hardly be· considered an open question, and recognized the rule as laid down in Re American Fine Arts Soc., and the cases of Sisters of Poor of St. Francis and Association for Benefit of Colored.

Orphans, above cited. It also said that in the American Bible Soc. Case, above cited, the principle of the decision in such cases was affirmed. I do not perceive any suggestion in these cases that every assessment on the roll is incomplete, so long as a change may be made as to any person or property thereon. Indeed, the decisions in the St. Francis, Colored Orphans, and Babcock Cases could not have been made, had that theory been entertained. In those the assessment was deemed complete on the second Monday of January, although concededly the valuations of all the property on the books might have thereafter been largely increased or diminished. And so in the American Fine Arts Soc. Case and in the Ætna Ins. Co. Case the books were not so thoroughly completed by May 1st that no subsequent change in the total valuation of the property thereon might not occur. If any persons thereon had prior to that date made application for a change, the decision could be made thereafter, and then the ratio of each person's assessment to the whole would be changed. It seems to me clear that such cases establish the rule that whenever proceedings to assess any particular property have so far progressed under the general taxing laws that it can neither be removed from the roll, nor its valuation changed by the assessors, it is unalterably assessed, and its status is fixed for the ensuing year. In neither of such cases is any significance given to the fact that possibly the assessing officer might thereafter add to or so change the footing of the whole roll that its ratio to such assessment would be increased or diminished. The assessment of the property in question was in each case held complete, even though the roll might be changed in such other respects. Under such a rule, this plaintiff was clearly assessed for the sum of $100,000 before the exempting act in question took effect. Its grievance day had passed prior to October 1st, and as to it the assessors were as powerless to strike off its assessment or to change its valuation as were the tax commissioners after the 1st day of May in either of the above-cited cases. Therefore such cases seem to be a clear authority against the plaintiff's claim for exemption in this case.

It is urged that we should not construe this act so as to inflict double taxation against the plaintiff. But there is no question of construction before us. The plaintiff claims exemption by reason of the act. The city replies that, inasmuch as there is no provision in the act giving it a retroactive application, it does not affect the assessment in question. The plaintiff does not claim that there is any such provision, or attempt at any such provision, in the act, and so no question of its construction arises. It is settled law that such a statute will not be held applicable to an assessment that is completed prior to the statute's taking effect, and the sole question is whether the assessment against the plaintiff is such an assessment. That calls for a construction of the decisions in the court of appeals, but not for a construction of any statute. As held in those cases, a statute should not be given a retroactive effect when no such intent appears in the act itself, and that is so even though the statute works a double taxation when it first goes into operation. That is a matter for the legislature to provide against; and, clearly, if there is no attempt to

do it in the statute itself, the burden which the statute imposes must be endured.

I am forced to the conclusion that the statute under which the plaintiff claims exemption in this case is not operative upon the assessment of which it complains. The tax which it here seeks to recover back from the city was well levied and collected, and hence judgment should go against the plaintiff and in favor of the defendant for costs.