FIRST NAT. BANK OF BINGHAMTON v. CITY OF BINGHAMTON.

(Supreme Court, Appellate Division, Third Department. May 23, 1902.)

TAXATION—BANKS—ASSESSMENT—STATUTES.

> Laws 1901, c. 550, which became effective April 25th of that year, provided that all assessments of the shares of banks made on or after January 1, 1901, should be void, and another assessment made pursuant to the statute. Held, that the statute substituted the new liability for the old, as of January 1, 1901, and relieved the stockholders of banks from all liability after January 1, 1901, under any other law.

Action by the First National Bank of Binghamton against the city of Binghamton. Submission of controversy under Code, § 1279. Judgment for plaintiff.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Harvey D. Hinman, for plaintiff.
Frank Stewart, for defendant.

SMITH, J. Plaintiff here seeks to recover from the defendant the sum of $4,786.18 paid by plaintiff's assignors upon an assessment for city taxes in the year 1901. These taxes were concededly paid under duress if their exaction was illegal, and the sole question for our determination here is whether the stockholders of the plaintiff's bank were liable under the law to pay the city tax of 1901.

Upon April 25, 1901, chapter 550 of the Laws of that year became effective. That act assumes to amend the tax law of the state by changing the rule of taxation upon the shares of stock of banks and banking associations. Under that act the value of the shares of stock is to be ascertained by adding together the amount of the capital stock, surplus, and undivided profits, and by dividing the result by the number of outstanding shares. The rate of tax is then fixed at 1 per cent. upon such value, and it is provided that such tax shall be in lieu of all other taxes whatsoever for state, county, or local purposes upon said shares of stock. It is further provided that the board of supervisors of the several counties shall, on or before the 15th day of December in each year, mail to the president or cashier of said bank a statement containing the assessed value of the said shares, and the aggregate amount of tax to be collected thereupon. This tax the bank is required to pay within 15 days after the receipt of the said statement. The act further provides:

"All assessment of the shares of stock of banks and banking associations made on or after January first, nineteen hundred and one, and prior to the

passage of this act, shall be null and void, and new assessments thereof shall be made agreeably to the provisions of this act."

After the passage of the act the city tax for the fiscal year beginning the 1st day of July, 1901, was levied upon the shares of stock of the plaintiff bank, and was paid under protest and duress. The defendant claims that while the taxes for state and county expenses are payable in December, and those for city purposes in July, one assessment only is made therefor, which assessment was made and completed before the 1st day of January, 1901, and that therefore the tax was lawfully exacted. The contention of the plaintiff is that said tax was assessed after the 1st day of January, 1901, and that therefore the city was unauthorized to collect the same, and the stockholders, having paid the same under duress, are entitled to its return.

This case is nearly akin to the case of the Binghamton Trust Company against the same defendant, 76 N. Y. Supp. 517, decided herewith. Reference is made to the opinion in that case. The statute here, as there, is one not of exemption, but one which, if constituted as defendant desires, would result in double taxation of plaintiff. The inquiry here, as there, is to ascertain the real intent of the statute. In that case the act became effective in March before the April revision. In this case the act became a law upon the 25th of April, after the revision of the tax roll. In this act, however, is found the provision that all assessments of shares of stock made on or after January 1, 1901, and prior to the passage of the act, shall be null and void. The word "assessment" has a double significance. It may mean the appraisement of property for the purpose of taxation, or it may mean the apportioning of the tax to the taxable property. This double significance is recognized by all lexicographers and in the statutes. In the defendant's charter, as set out in the opinion in the Trust Company Case, the word is used both in the sense of an appraisement or valuation of property for the purpose of taxation, and of the apportionment to the taxable property of the tax to be assessed. Under the defendant's charter an assessment in the sense of an apportionment of the tax to the taxable property on the roll could have been made after the April grievance day, and before the passage of the act. To provide against such an assessment, as well as any other assessment which might have been made meantime, was, I think, in contemplation of the legislature when this provision of law was enacted. From the whole statute the scheme is apparent to substitute the new liability for the old as of January 1st, and to relieve the plaintiff's stockholders from all liability after January 1st under any other law. With this scheme manifest, the statute is self-executing, and operates to take the property from the roll and avoid any assessment made.

The plaintiff claims as assignee of the several stockholders, and no question is made of the right to recover the amount claimed under the interpretation of the statute found.

Judgment should therefore be ordered for the plaintiff against the defendant for the sum of $4,786.18, with costs. All concur.

PARKER, P. J. I concur in the conclusion reached in this case. I do not do so upon the ground that plaintiff was assessed between

January 1 and April 25, 1901, for the taxes which it seeks to recover back, because I am of the opinion that such assessment was completed on October 1, 1900; but I do so upon the ground that the legislature intended to give the act of April 25, 1901, a retroactive effect, so as to avoid all assessments of taxes that were to be collected for the year beginning January 1, 1901. The language is not very apt to express that idea, but it indicates a purpose to exempt some assessments made prior to the passage of the act, and it is hardly to be supposed it intended to exempt those assessments made between January 1 and April 25, 1901, and include those which, although made before January 1st, were to be collected and appropriated to the expenses of 1901. This plain effort to declare some assessments void may very well be held to include all assessments upon which the taxes levied for the purposes of 1901 were based. In view of such provision, and to avoid double taxation, I conclude that it is reasonable to ascribe such an intent to this act.