NATIONAL HATS COMPANY, por su dueño MICHEL NEHMI RA-CHID, demandante y apelante, *v.* RAFAEL SANCHO BONET, en su carácter de TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 9069.—*Sometido:* Marzo 9, 1945. *Resuelto:* Julio 6, 1945.

242

*Ángel M. Torres* y *Sergio A. Silva,* abogados de la apelante; *Hon. Procurador General Interino Jesús A. González* y *G. Benítez Gautier, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

La Comisión de Servicio Público concedió a la apelante, National Hats Company, como industria nueva, una exención del pago de contribuciones por el período comprendido entre marzo 2 de 1932 y enero 31 de 1935. Después de vencido este término, o sea el 4 de febrero de 1935, la apelante radicó en la Comisión una petición para que se le concediera "una prórroga de dicha exención" por cinco años, a lo que se opuso el Tesorero de Puerto Rico. Después de celebrarse varias vistas públicas, no fué hasta el 4 de mayo de 1936 que la Comisión dictó resolución concediendo a la apelante un nuevo período de exención de cinco años al cual le dió efecto retroactivo para que comenzara desde el día 1ro. de febrero de 1935. Mientras tanto, el Tesorero el 15 de enero de 1936 impuso a la apelante las contribuciones correspondientes al año económico de 1936–1937 y la compañía acudió en alzada ante la Junta de Revisión e Igualamiento alegando que estaba pendiente de resolución su solicitud de exención, habiendo desistido posteriormente de su alzada cuando la Comisión dictó su resolución de mayo 4 de 1936. Esto no obstante, la contribuyente pagó bajo protesta las contribuciones correspondientes al año 1936–37, ascendentes a $49.50, debido a que el Tesorero continuó requiriéndole de pago bajo amenaza de embargo, y radicó demanda solicitando su devolución ante la Corte de Distrito de Bayamón, la cual fué declarada sin lugar, estableciéndose entonces el presente recurso de apelación.

Dos son las cuestiones a considerar y resolver en este recurso: primera, si la Comisión de Servicio Público tenía

poder para eximir a la apelante del pago de contribuciones desde el 1ro. de febrero de 1935 al 4 de mayo de 1936, es decir, si al dictar su resolución en esta última fecha pudo darle efecto retroactivo y, segunda, aceptando que la exención no comenzó hasta el 4 de mayo de 1936, si el Tesorero podía imponer y cobrar las contribuciones correspondientes al año económico 1936–37.

Este caso fué sometido por las alegaciones a la corte inferior. En la demanda se dijo que se había solicitado y la Comisión le había concedido a la apelante una ''prórroga'' de cinco años a la exención anterior, mientras que en la contestación del demandado al negarse esos hechos se alegó que lo que la apelante había solicitado y la Comisión le concedió fué ''un nuevo plazo de exención de cinco años, a contar del 1ro. de febrero de 1935.'' La corte inferior resolvió que lo concedido por la Comisión fué ''un nuevo plazo a contar desde el día primero de febrero de 1935'' y aparentemente esto se aceptó como correcto por la apelante pues en su alegato dice que ''el *nuevo* término de exención fué fijado por la Comisión . . . para comenzar el día 1ro. de febrero de 1935. . .'' No creemos que las diferentes palabras usadas por una y otra parte hagan variar sustancialmente la cuestión planteada, o sea, si la Comisión podía conceder la exención con carácter retroactivo y en cuanto a esto somos de opinión que no erró la corte inferior al resolverla en la negativa.

La Ley núm. 40 de 25 de abril de 1930, pág. 315 (derogada por la Ley núm. 94 de 14 de mayo de 1936, (1) pág. 495) no contenía nada que permitiera tal actuación por parte de la Comisión. La sección 2 disponía *ab initio:*

''Sección 2.—Dichas industrias nuevas y sus edificios, maquinarias, materiales, franquicias, etc., y en general todos los bienes, derechos y privilegios pertenecientes a dichas industrias que sean necesarios para su trabajo y funcionamiento, estarán exentos de toda clase de contribuciones por un período que no exceda de diez años,

según se determina por la Comisión de Servicio Público, cuyo término se contará desde la completa instalación industrial; . . ."

Interpretando dicho estatuto dijimos en *P. R. Am. Sugar Refinery, Inc.* v. *Domenech, Tes.*, 46 D.P.R. 602, 609:

"La letra de la ley es tan clara que hiere la retina con la intensidad de su luz. La facultad de la Legislatura para decretar la exención es una cuestión que no admite dudas. La Comisión de Servicio Público ha sido creada por la Ley Orgánica; pero sus poderes en cuanto a las industrias que deben ser exentas de contribuciones emanan de la Legislatura de Puerto Rico. La exención y su alcance en cuanto a los bienes es función que corresponde al poder legislativo. . .(1)

Si bien la Legislatura delegó en la Comisión de Servicio Público parte de su poder para eximir del pago de contribuciones a industrias nuevas, nada dijo en cuanto a delegar el poder que la propia Legislatura tiene para dar carácter retroactivo a cualquier exención contributiva que ella conceda; y por tanto, forzoso es concluir que la Legislatura no le concedió dicha facultad a la Comisión, y que ésta actuó en exceso del poder que le fuera delegado. La apelante no nos ha citado ningún caso que sostenga su teoría de que por el hecho de haberse delegado a una agencia gubernamental poder para conceder una exención contributiva desde determinada fecha debe interpretarse que, vencido dicho término y concedido uno nuevo un año después, tenga poder para darle carácter retroactivo a la nueva exención. Es elemental que aun cuando se trata de leyes concediendo exenciones contributivas las mismas deben interpretarse restrictivamente y

---

(1) *Cf. Crow* v. *General Cable Corporation*, 137 So. 657, 658 (1931):

"El poder legislativo para eximir a plantas industriales del pago de contribuciones por un período limitado como un aliciente para su establecimiento dentro del estado no puede cuestionarse. Si los beneficios a obtenerse justifican tal exención es una cuestión de norma legislativa [*legislative policy*]. También es la ley que, en ausencia de restricciones constitucionales, la Legislatura puede delegar el poder a agencias gubernamentales locales. [citas]."

Y véase además *Trustees of Phillips Exeter Academy* v. *Exeter* 33 A.2d 665, 670 (1943).

que a menos que expresamente se haga constar en ellas que tendrán efecto retroactivo no deben interpretarse en ese sentido. *Monllor & Boscio, Sucrs.* v. *Sancho Bonet, Tes.*, 61 D.P.R. 67; *Puerto Rico Ilustrado, Inc.* v. *Buscaglia, Tes.*, 64 D.P.R. 914, y casos y autoridades citados en ellos.

. La Legislatura delegó en la Comisión parte del procedimiento legislativo para la determinación del período, no mayor de diez años, durante el cual podría concederse a cada industria nueva una exención del pago de contribuciones. Resolver que dicha delegación incluía la facultad de dar carácter retrospectivo a la exención, sería extender la delegación de poderes más allá de la intención legislativa. Aun en cuanto a la primera exención la Comisión no podía darle efecto retroactivo pues la ley disponía que el "término se contará desde la completa instalación industrial." En cuanto al nuevo plazo correspondía a la apelante hacer su solicitud de nueva exención, no sólo antes de vencer el término concedido, sino con tiempo suficiente para que la Comisión actuara antes de vencer dicho término. Somos de opinión que la resolución de 4 de mayo de 1936 sólo podía tener carácter prospectivo, y como consecuencia la apelante no estaba exenta del pago de contribuciones durante el período comprendido entre el 1ro. de febrero de 1935 y el 4 de mayo de 1936.

¿Venía obligada la compañía apelante a pagar las contribuciones correspondientes al año económico 1936–1937 por no estar exenta de dicho pago el 15 de enero de 1936?

La contención de la apelante es que si bien las contribuciones se fijan el 15 de enero de cada año, no se adeudan realmente hasta el primero de julio y el primero de enero, cuando deberán pagarse por adelantado, de acuerdo con el artículo 330 del Código Político que dispone lo siguiente:

"Las contribuciones impuestas sobre el valor de los bienes muebles e inmuebles serán pagaderas semestralmente por adelantado, los días primero de julio y enero de cada año. Dichas contribucio-

nes se convertirán en morosas, si no se satisfacen dentro de los sesenta días después de la fecha en que las mismas se vencieron, y los colectores recaudarán sobre dichas contribuciones morosas una suma adicional de medio por ciento sobre el. importe de la contribución, por cada mes o fracción de mes desde que dichas contribuciones sean morosas; *Disponiéndose;* que cuando los colectores no tengan en su poder los recibos de contribuciones el 1ro. de julio de cada año, en tal caso el expresado término de sesenta días se contará desde la fecha en que los recibos estuvieren en su poder, y así se anunciare.''

Este artículo debemos interpretarlo en relación con el 298 del mismo cuerpo legal que, en lo pertinente, dispone:

''Que todos los bienes raíces serán tasados en el municipio en que estuvieren ubicados, para imponerles contribución, a nombre de la persona que fuere dueño de los mismos o que estuviere en posesión de ellos el día quince de enero, y la persona en cuyo nombre aparecieren inscritos en dicha fecha será tenida por dueño legítimo de dichos bienes. . .''

En el caso de *Asociación de Maestros* v. *Sancho Bonet, Tes.,* 54 D.P.R. 536, resolvimos que la responsabilidad del pago de las contribuciones sobre la propiedad surge en la fecha en que la tasación de los bienes para fines contributivos queda terminada, y dijimos, a la pág. 541:

''La necesidad de fijar una fecha, anterior al momento físico del cobro, en que el estado puede definitivamente calcular sus ingresos para el siguiente año fiscal, es obvia. Toma tiempo el preparar la lista de las tasaciones sobre las propiedades, las planillas y los recibos de contribuciones. *El estado contributivo* (taxable status) *de la propiedad debe permanecer inalterado después de determinado período de tiempo* y con anterioridad a la fecha del pago de la contribución, puesto que el Tesorero debe tener una base fija sobre la cual flotar sus empréstitos, aumentar o reducir las contribuciones, etc.'' (Bastardillas nuestras.)

Al mismo efecto véanse *Roig* v. *Sancho Bonet, Tes.,* 54 D.P.R. 649; *Valcárcel* v. *Sancho Bonet, Tes.,* 61 D.P.R. 213, 216; *Buscaglia* v. *Tribunal de Contribuciones,* 63 D.P.R. 39; *Town of Myrtle Beach* v. *Holliday,* 26 S. R.2d 12, 14 (1943); 2 Cooley, *Taxation,* cuarta edición, sección 546.

Es cierto que hasta ahora hemos aplicado la regla estable-
cida en los casos citados, en el sentido de que traspasos de
la propiedad hechos con posterioridad al día 15 de enero no
exime al que aparecía como dueño en dicha fecha del pago
de la contribución impuesta por el Tesorero en la mencio-
nada fecha. Empero, la regla es igualmente aplicable a ca-
sos en que la propiedad no estaba exenta del pago de contri-
buciones el 15 de enero aun cuando posteriormente sea
exenta. Cooley, en la obra citada, volumen 2, sección 712,
expone la regla en cuanto a la determinación del día desde
el cual se rige la exención, diciendo:

"Si la propiedad no está exenta el día que se impone la contri-
bución (*tax day*), está sujeta a contribución para el año fiscal aun
cuando posteriormente sea exenta. Por ejemplo, se ha resuelto que
cuando una finca ha llegado a estar sujeta al pago de contribuciones
continúa estándolo durante un año aunque subsiguientemente se
adquiera para fines que la eximen. Así, cuando una constitución que
prohibe exenciones entra en vigor después de la fecha fijada para
la tasación de la propiedad, el derecho a exención de contribuciones
para dicho año no es afectado."

En el caso de *Sisters of the Poor* v. *New York,* 3 N. Y.
Supp. 433, 20 N. E. 417, citado por Cooley, se resolvió que
propiedad sujeta a contribución cuando los libros de tasa-
ción estaban abiertos para la corrección de las tasaciones,
pero que después y antes de ser cerrados, fué transferida a
una corporación cuya propiedad estaba exenta, no quedaba
por ese hecho exenta de pago. Y en el de *Swan* v. *State,* 77
Ala. 545, se resolvió que cuando el año contributivo, en
cuanto a propiedad inmueble se refiere, comenzaba el pri-
mero de enero y ciertas tierras fueren declaradas exentas
de contribuciones por ocho años desde el primero de mayo
de 1876, el término de exención comenzaba con el año 1877.
Así mismo en el caso de *City of Newport* v. *Masonic Temple
Association,* 45 S. W. 881, se sostuvo que estando la propie-
dad exenta del pago de contribuciones por la demandada el

día en que las mismas eran impuestas, ese derecho de exención no era afectado por la limitación sobre exenciones contenida en la constitución aprobada con posterioridad a dicha fecha.

Véanse, además, *Board of Com'rs of Comanche County* v. *Central Baptist Church,* 276 Pac. 726, y la Monografía en 63 A.L.R. 1332.

No estando exenta la apelante del pago de contribuciones el día 15 de enero de 1936 no erró la corte inferior al declarar sin lugar la demanda.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado señor De Jesús no intervino.