(52 Misc. Rep. 1)

In re PULLMAN.

(Supreme Court, Special Term, Seneca County. November, 1906.)

TAXATION—ASSESSMENT—MORTGAGES.

In a town assessment, the assessors set down the name of a person taxable therein and the amount of a certain mortgage held by her on the 1st of July. The mortgage was discharged during the month of July, and another taken in its place for the same debt, and the recording tax thereon paid. *Held*, that the assessors, on hearing grievances in August, on evidence of such fact, should have stricken out the assessment for the original mortgage; the second mortgage having paid the recording tax required by Laws 1906, p. 1447, c. 532.

In the matter of the application of Betsey Pullman, executrix for a writ of certiorari to R. Fenton Seeley and others, assessors of the town of Waterloo. Assessment stricken from the roll.

George E. Zartman, for relator.

Clarence E. Ten Eyck, for defendants.

DUNWELL, J. The assessors, between May 1 and July 1, 1906, in performance of their official duties, ascertained certain mortgages of real property in Seneca county as belonging to the relator, which they valued at $18,000. Before July 1, 1906, these mortgages were of record in Seneca county clerk's office. After July 1, 1906, and within that month, the relator discharged these mortgages of record and substituted for them "renewal" mortgages to take their place, which had been given in discharge of the former mortgages for the same debts secured upon the same real property, and paid to the recording officer the recording tax thereon, as provided by section 294 of the tax law (Laws 1905, p. 2062, c. 729), as amended by chapter 532, p. 1447, Laws 1906. On the 21st day of August, 1906, the assessors met for the purpose of hearing and determining complaints in regard to their assessments, in pursuance of due notice, according to the statute.

The relator there presented to the assessors the facts hereinbefore set forth as to the change in the mortgages and the payment of the recording tax to the county clerk, claimed exemption from taxation on account of the former mortgages, and asked that the assessment roll

should be corrected by striking therefrom the assessment of the relator therefor. The assessors refused; and, on the hearing before the court on return of the writ of certiorari, their counsel insists that the assessors were justified in their refusal, inasmuch as, they having assessed the relator for the value of the former mortgages prior to July 1st, thus fixing the ownership and valuation correctly prior to that date, the subsequent change in the mortgages and the payment of the recording tax could not effect a legal change in the status of the relator as a person liable to assessment and taxation for the former mortgages, which status had become irrevocably fixed by the action of the assessors prior to July 1, 1906.

By section 293, c. 532, p. 1449, Laws 1906, which took effect July 1, 1906, a tax of 50 cents on each $100 and major fraction thereof of debts secured by mortgage on real property is imposed upon such mortgages. Section 294 provides that such tax shall be paid to the recording officer on the recording of the mortgage. Section 291 provides that all mortgages of real property within the state, upon which such recording tax has been paid, "shall be exempt from other taxation by the state, counties, cities, towns, villages, school districts and other local subdivisions of the state."

The question to be determined on this review is whether the facts thus presented to the assessors entitled the relator to exemption from taxation for those mortgages and to the removal of relator's assessment from the assessment roll. No question is raised as to the proper and correct ascertainment by the assessors of the ownership and value of the property prior to July 1st. The subsequent acts of the relator in discharging the former mortgages and substituting new ones in their place for the same property and causing the same to be recorded and paying the recording tax thereon are relied upon to effect an exemption of the relator from taxation for the former mortgages and to entitle her to the removal of her assessment from the assessment roll.

By section 20 of the tax law (chapter 908, p. 803, Laws 1896), it is provided that:

"The assessors in each tax district shall annually, between May first and July first, ascertain by diligent inquiry all the property and the names of all the persons taxable therein."

In construing this statute the Court of Appeals says:

"Under these statutes, it has been held in this court, that the taxable status of persons and property becomes fixed on the 1st day of July in each year, and that no power exists to enter property thereafter acquired upon the roll or to change an assessment theretofore made on account of any transfer of title." People ex rel. Twenty-Third St. R. Co. v. Commissioners, 91 N. Y. 593.

The statute further provides that the assessors shall complete the assessment roll on or before the 1st day of August, give notice forthwith of the completion and designate a place where it may be seen and examined by any person interested until the third Tuesday of August following. Laws 1896, p. 810, c. 908, § 35. This part of the statute has been construed by the Court of Appeals in People v. Supervisors of Chenango County, 11 N. Y. 563. At page 572 the court says:

"The assessment roll is thus made out between the 1st day of July and the 1st of August. That roll is the assessment, which may afterwards be reviewed or corrected in the manner prescribed by the subsequent provisions of the statute. All that is done by the several assessors, in taking down names and entering descriptions and amounts in their respective districts, previous to the 1st of July, is merely the obtaining of information preliminary to the assessment, to be made when all the assessors meet in July and examine and correct and alter such memoranda when they make out the assessment roll."

The roll may be corrected by the assessors until they give the statutory notice of its completion. People ex rel. Chamberlain v. Forrest, 96 N. Y. 544.

From these references to the statutes and decisions, it is seen that, although the persons and property to be assessed are to be ascertained by July 1st, the assessment is not completed until August 1st. In the case at bar the recording tax was paid in July before the completion of the assessment. In the case of Mygatt v. Washburn, 15 N. Y. 316, the court held that, although Mygatt and the ownership of his property had been ascertained before July 1st, yet, he having changed his residence before that date, the assessors had no jurisdiction to assess him; that is, his becoming a nonresident in the meantime (before July 1st) exempted him from taxation. In the present case, if the relator had changed her residence or transferred her property after July 1st, she could not have been relieved from the assessment for those reasons. But, as we have seen, during July, and while the work of the assessors was in progress, and before the assessment was completed, the relator substituted new mortgages for the old mortgages and paid the recording tax on the new mortgages. This, the Legislature has declared, exempted the new mortgages from local taxation.

It may be suggested that the new mortgages were different instruments, and not the same that were listed by the assessors before July 1st. But they were upon the same real property, secured the same indebtedness, and represented the same property interests. There was no change, except in the mere evidences of the indebtedness. The property itself remained identical. Thus, before the assessment had been completed, the relator had paid the recording tax upon the identical property, although represented by different instruments, that the assessors were in process of assessing. Why had it not become exempted before the completion of the assessment? The Legislature is all-powerful over the subject of taxation. It had enacted the recording tax on mortgages, and declared that the payment of that tax should exempt from local taxation all mortgages so taxed "and the debts and obligations which they secured together with the proper writings evidencing the same." Tax Law, Laws 1905, p. 2060, c. 729, art. 14, § 291, as amended by Laws 1906, p. 1447, c. 532.

It has been shown that the new mortgages represented the same "debts and obligations" which the assessors proceeded to assess and which this statute in terms declares shall be exempt. If the old mortgages, on account of which the assessors retained the assessment, are still to be considered "paper writings evidencing the same" (i. e., debts and obligations secured thereby), they, too, are exempt by the very terms of the statute. The terms of the statute of exemption are so

broad that they exempt from local taxation all property, choses in action, and instruments evidencing the same, if covered by the mortgage that has paid the recording tax. The Legislature did not limit the time within which the relator might record her mortgages and pay the recording tax, except she could not do so until after July 1st. But, having accomplished it before the assessors had completed their assessment, she was in time to claim exemption from local taxation. When the facts were presented to the assessors, at the time appointed by them for the hearing of grievances, they should have declared relator exempt from local taxation and removed her assessment from the roll.

In People ex rel. A. B. Society v. Commissioners, 142 N. Y. 348, 37 N. E. 116, the Court of Appeals, in considering the effect of an act of the Legislature exempting certain property from taxation, says:

"But it is indisputable that the Legislature may release property, which has been assessed from taxation. The power over the subject is unlimited, and may be exercised in any way and at any time during the proceedings for taxation. * * * We feel constrained to hold that, the act having been given immediate operation at a time when the tax books were directed by law to be open, the effect was to withdraw the property affected from all liability to taxation, and that the tax commissioners actually had a warrant in law for the correction of the tax books by removing therefrom the entry of the property in question."

It would be otherwise if the assessment had been completed when the recording tax was paid. Ætna Ins. Co. v. Mayor, 153 N. Y. 331, 47 N. E. 593.

The assessors are not chargeable with negligence, bad faith, or malice. Consequently no costs are allowed.

An order is directed striking the assessment against relator from the roll. Ordered accordingly.