William J. Crangle, J.
Petitioner brings this proceeding for review of tax assessments for 1962 and each of the years thereafter up to the present time with regard to property acquired by it and developed as housing facilities for low income families in the City of Schenectady.
On July 31, 1959 the City of Schenectady contracted with the Schenectady Municipal Housing Authority and the State of New York concerning the housing development which is the subject of this proceeding and known as the Ten Eyck Project. Under the contract and pursuant to section 73 of the Public Housing Law the city agreed to pay subsidies to petitioner in an amount at least equal to those paid by the State on the project which was to be developed and maintained by petitioner. It was agreed that all or any part of the amount of the city subsidy might be in the form of exemption from taxes and the city agreed that the municipal taxes payable on the project site prior to construction of the project would be “ limited to the taxes on the assessed valuation of only the land plus the taxes on the assessed valuation of any improvements remaining on the land.” Subdivision 4 of section 52 of the Public Housing Law provides that “So much of the value of the property included in a state project as represents an increase over the assessed valuation of the real property, both land and improvements, on the date of the contract * * * for a state subsidy, shall be exempt from * * * taxes.” The housing development has been built in compliance with the contract.
The respondent from 1959 through 1961 carried on the assessment rolls the various parcels of land on Broadway which were used by petitioner for this project as separate parcels and gave them an assessed taxable value as vacant land which was their condition on the date of the contract. Petitioner acquired the land and building known as 325 Broadway in 1960 and this was and has since been assessed as improved land. The land and buildings on Hamilton Street were acquired in 1960 and have *934 been assessed as improved land. For the tax year 1962 respondent changed this method and procedure by making up one assessment for all of petitioner’s land in the Ten Eyck project. This single assessment was computed by combining the assessed valuation of the Broadway parcels as they existed with improvements in 1958, a year prior to the contract date, and the assessment on 325 Broadway and the Hamilton Street parcels with improvements on their date of acquisition which was after the contract date. It was this assessment which was used as the “ assessed taxable valuation” upon which petitioner’s taxes were computed and billed and about which petitioner complains.
Respondent is obliged, of course, to assess the property within its jurisdiction at market value as of the tax status date for each taxable year. However, the assessed value and the “ assessed taxable value ” or the value upon which any given taxpayer’s tax is computed may differ. By entering into the contract the city became bound to base the “ assessed taxable valuation ” of the Ten Eyck project land upon the state and condition of that property on the date of the contract. That portion of the Ten Eyck project land which was composed of the Broadway parcels was at that time, with the exception of 325 Broadway, unimproved land and could, therefore, be taxed only as such.
As to these properties respondent has applied an assessed taxable valuation of the property with improvements as they existed a year prior to the date of the contract. It is true that it was petitioner who demolished the buildings on the various Broadway properties just prior to signing the contract and after acquiring the property some six years previous to the contract date as off-site property in connection with another project. The city was, however, aware of this fact when it entered into the Ten Eyck contract and is bound by the consequences of that contract. The assessed taxable valuations should therefore be corrected as to these Broadway properties and reduced to an amount not exceeding the valuations established on July 31, 1959-for vacant land.
After the date of the contract the city acquired for street widening purposes fifteen feet of petitioner’s land fronting on Broadway. Respondent should take this into consideration in fixing the new assessment but of course the widened street may, by increasing the value of the remaining property, offset the reduction in the quantity of petitioner’s land. This will be for respondent to determine upon reassessment. Similarly, the assessment on 325 Broadway should be corrected to reflect a reduction for that portion of this parcel of petitioner’s land *935 acquired by the city but as to this parcel the assessment as improved property is correct.
The assessment on 323 Broadway as against the petitioner is illegal since petitioner does not and never did own this property. The assessment roll should be corrected accordingly.
Petitioner claims that it should not be assessed after the tax year 1962 for the parcels known as the Hamilton Street properties as well as part of 324 Broadway which it owned and paid taxes upon in 1962 and for previous years. These parcels were ceded to the city in August of 1962 by deeds dated August 9, 1962 and accepted by the city in an ordinance adopted August 20, 1962. Although the taxes did not become a lien upon these parcels until January 1, 1963 at which time petitioner no longer owned them, the tax status date for the 1963 assessments was June 1, 1962. No power exists after that date to change an assessment made on account of any transfer of title. (People ex rel. Twenty-Third St. R.R. Co. v. Commissioners of Taxes & Assessments, 91 N. Y. 593.) The assessments, as such, therefore are correct.
However, by its contract of July 31, 1962 respondent agreed that liability for taxes on lands ceded to the city would cease upon the cession of or tender of cession of such land to the city. Since we are here concerned with the application of tax credits against the city’s contractual obligation to pay subsidies, the city must be held bound by its contract with respect to petitioner’s liability for taxes on these properties. Therefore, the “ assessed taxable valuation ’ ’ for the Hamilton Street properties and that part of 324 Broadway ceded to the city should be corrected accordingly for the taxable year 1963. (Matter of Pullman, 52 Misc. 1.)
The parcels described as “ 17 part of lot Millard Street ’ ’ and “ 68 part of lot Millard Street ” were acquired by petitioner and assessed by respondent at the values established in 1959. They were given a higher assessed taxable value in 1964 as a result of a neAv appraisal on all city property. This Avas in violation of the city’s obligation under the January 31, 1959 contract and section 52 of the Public Housing Luaat and the assessed taxable valuations must be reduced to the amount of each as assessed in 1963.
The respondent is directed to correct the assessed taxable valuations against petitioner’s real property accordingly and upon reassessment to compute petitioner’s corrected tax liability to the city for each of the years involved in this proceeding as to each of the parcels referred to herein. An appropriate order may be submitted upon notice.