Howard T. Hogan, J.
In. this tax certiorari proceeding, the petitioner moves for summary judgment declaring that its real *148 property was exempt from taxation on the May 1, 1972, tax status date; for an order directing the respondent Board of Assessors to correct the 1973 tax roll to reflect said exempt status; and for an order directing the proper officers to refund payments made by petitioner for the 1972/1973 school and 1973 general taxes, with interest.
The facts are not in dispute. The petitioner, an organization which qualifies for exemption from real estate taxes pursuant to section 421 of the Real Property Tax Law, acquired the subject property by delivery of a deed dated May 1, 1972. Said deed was not recorded until May 5, 1972. On or about May 1, the Board of Assessors published its tentative assessment roll which included the subject property. Petitioner filed a grievance application dated May 15, 1972, claiming exemption from taxation, and attached to said grievance an application for exemption.
When the final assessment roll was published on August 1, 1972, the subject property appeared thereon without exemption. The petitioner thereupon filed another application for exemption together with supporting documents including copies of its certificate of incorporation, by-laws and a deed to the property. Thereafter, petitioner furnished an affidavit concerning the delivery of the deed pursuant to instructions from the assessors. On October 30, 1972, the assessors advised the petitioner that its application had been forwarded to the County Attorney for a formal opinion.
On November 10, 1972, the assessors notified the petitioner that its application for exemption had been granted for the 1974 assessment roll but that on May 1, 1972, the tax status day for the 1973 roll, the exempt status did not exist and no exemption was granted.
There is only a question of law presented: Whether property conveyed to a tax-exempt organization on the tax status date is entitled to exemption from real estate taxes if the conveyance is not recorded until after the status date?
The petitioner answers this question in the affirmative. The respondents contend that no exemption exists as of the May 1, 1972 status date both as a matter of law and as a matter of public policy. They state that in order to determine the status of real property for purposes of preparation of the tentative assessment roll on May 1 in each year, resort must be had to the recording indices. They contend that the owner for tax purposes is the record owner on the status date and that section 6-16.0 of the Nassau County Administrative Code (L. 1939, chs. 272, 701-709, as amd.) prevents changes of ownership on the. assessment *149 roll during the assessment year. Respondents further contend that to permit an exemption on the facts in this case, where the conveyance is recorded after the status date, would introduce an element of uncertainty into the assessment process.
The taxable status of real property is fixed annually on the first day of May according to its condition and ownership on that day (Nassau County Administrative Code, § 6-2.1; Real Property Tax Law, § 302). Once a deed is delivered by the grantor and accepted by the grantee, the conveyance takes effect immediately so as to vest the estate or interest intended to be conveyed (Real Property Law, § 244; Koehler v. Hughes, 148 N. Y. 507; Hovey v. Hovey, 170 N. Y. S. 822, affd. 183 App. Div, 184). The record before the court demonstrates that a deed to the subject premises was delivered to the petitioner and accepted on May 1, 1972. On that day, title was vested in the petitioner herein. Clearly, the subject property was entitled to an exemption from real estate taxes on the assessment roll prepared for the succeeding fiscal year, 1973 general taxes and 1972/1973 school taxes.
The recording statutes are designed to give notice to and to protect subsequent purchasers (Real Property Law, § 291). Recording does not convey title nor is it designed to protect the tax assessors. Section 6-3.0 of the Nassau County Administrative Code, requiring the assessors to make diligent effort to ascertain the name and address of the owner of each parcel of land, does not stand" for the proposition that the recording indices establish ownership for tax purposes. Section 6-16.0 of the Administrative Code does not support the respondents’ position either. That section provides: “ 6-16.0 Change of record ownership. Real property which has been properly charged to one person upon the assessment roll for any assessment year shall not be transferred afterwards on the assessment roll to another person within that assessment year. ’’ (Emphasis supplied.)
Since petitioner was the owner of the subject property on May 1, 1972, its real property was not properly charged on the assessment roll, but presumably was improperly charged to the grantor. This section, therefore, does not even apply in this proceeding.
The roll prepared on May 1,1972, was a tentative roll for the succeeding, fiscal year which did not become final until August 1, 1972 (Administrative Code, § 6-17.0). This period from the status date (May 1) to the date the roll becomes final (August 1) is designed for the hearing of grievances and to permit the roll to be changed, corrected or modified (Matter of Pullman, 52 *150 Misc. 1). Here, petitioner promptly acted on grievance day (May 15) and gave respondent actual notice of its status and ownership as of May 1, 1972. The logical and proper action of the assessors should have been to investigate the bona fides of the petitioner’s claim, a task which could have been accomplished long before the August 1 deadline.
Accordingly, the motion is granted in all respects.